WILLIAM WALTON, Admr., Respondent, v. FRA-
TERNAL AID ASSOCIATION, Appellant.

Kansas City Court of Appeals, July 9, 1910.

1. FRATERNAL ASSOCIATION: Forfeiture: Notice. Courts look with disfavor on forfeitures and where the by-laws of a fraternal association require a notice, there cannot be a valid forfeiture until such notice is given.

2. ———: ———: ———: Back Dues. If a member of a fraternal association is delinquent in his assessments, but in response to a demand for a certain month, enters into an understanding that he will pay that month and those in the future promptly, and those past as well as he could, there cannot be a valid suspension or forfeiture for the month for which he paid.

3. ———: ———: **Abandonment of Certificate.** Whether the liability of a fraternal association can cease by reason of abandonment, without there having been a forfeiture or suspension taken—*quaere.*

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

Affirmed.

*Haff & Michaels* for appellant.

(1) Agreements by the secretary of a local lodge of a beneficiary association extending a member's time for payment of dues or assessments beyond the time limited in the member's contract, are, in the absence of knowledge of such agreements on the part of the general officers, of no binding force on the general body. Knights of Columbus v. Burroughs, 107 Va. 671, 17 L. R. A., n. s. 246; Burke v. A. O. U. W., 136 Mo. App. 450; Shartle v. Modern Brotherhood of America, 122 S. W. 1139; Borgraefe v. Supreme Lodge, 22 Mo. App. 127. (2) Automatic *ipso facto* suspensions for non-payment of dues or assessments are necessary and are held valid and enforced by the courts, and in this case the suspension of deceased was lawful and the court should have directed a verdict on that ground alone. (3) Amendments to the by-laws changing only the time in which assessments may be paid affect only the internal economy, the procedure and system of collection, and do not affect the contract of insurance, and the laws, in that regard, in effect at the date of suspension are binding both on the association and the member and especially is this so, where the beneficiary is claiming rights under payments made in conformity with the amended law. Bacon on Benefit Societies (3 Ed.), sec. 188a; Morton v. Supreme Council, 100 Mo. App. 76.

*E. W. Shannon* and *Fyke & Snider* for respondent.

The appellant by statements in its brief on page 7 admits that the plaintiff made out a prima-facie case; the plaintiff was then entitled to recover unless the defendant pleaded and proved a forfeiture. Bacon on Benefit Societies (3 Ed.), sec. 414; Johnson v. W. O. W., 119 Mo. App. 98; Mulroy v. Supreme Lodge, 28 Mo. App. 463; Stewart v. Supreme Lodge, 36 Mo. App. 319; Force v. Supreme Lodge, 41 Mo. App. 106; Gruwell v. National Council, 126 Mo. App. 126.

ELLISON, J.—This action is based on a benefit certificate of life insurance issued by John E. Walton on the 8th of October, 1897, payable to Martha, his wife. He died on the 5th of October, 1905, and his wife died about three years afterwards. This plaintiff is the administrator of her estate. There was a trial and verdict for defendant, but the trial court granted a new trial and defendant thereupon appealed from that order.

The defense is based on a claim of forfeiture of the certificate for non-payment of dues. It seems that deceased's dues were taken care of by the lodge for a considerable period, when on the 3d of June, 1904, he received a letter from the secretary of the local lodge in which, among other things, was the following: "Don't you feel as though you and the boys could do something by this time; the lodge here feels as though you could. We have carried this a long time for you. If you will commence to carry it from now on and pay something on the back occasionally he will stay with you." In a few days thereafter (June 14th) he received another letter in which he is asked to send dues for May and June, or at least for June, which would be $2.70. Deceased answered that letter on July 5th and sent $2.70, payable to the secretary, which found its way to the treasury of the general council in due course. Defendant claims that deceased's suspension appears on its

records of a report of suspension, dated June 28, 1904, which merely read: "Suspended members, J. E. Walton," giving the number and amount of his certificate, and on the back thereof was endorsed: "Received June 30th, 1904," and "Receipted July 30th, 1904."

Defendant's by-laws required that a member should. be notified of his suspension, and what is termed a notice, under this provision, was not given to deceased until August 4, 1904. It reads:

"In compliance with Chapters 6 and 8, Revised Edition 1903, Laws of General Council, this notice is mailed to remind you that the reports received at this office from your Local Council No. 356 show you to be in arrears for assessment No. 5. Fearing that it may be an oversight on your part, this notice is sent to advise you of the importance of being prompt in the payment of your assessments, as your protection ceases at date of suspension.

"Trusting you will give this your immediate attention, I am,

"Yours in L. C. F. & J.
"T. J. EDMONDS,
"General Secretary.

"P. S. By suspending you are the loser. Don't do it."

Courts do not look upon forfeitures with favor, and bearing that rule of law in mind, we feel constrained to say that this paper is not a notice of forfeiture. It merely calls attention to his being in arrears, and its terms do not admit of a construction of notice of suspension. The postscript can certainly mean nothing less than that he is not yet suspended. It seems, however, that deceased accepted such notice as a suspension, as was shown by his letters. In a letter of August 9th, he wrote to the general secretary in response to the above notice of August 4th, and expressed surprise that it should have been sent. Stated he had been unfortunate in getting behind and that he had made an agree-

ment on June 14th, with the secretary of the local lodge, that he was to make payments thence on, and pay as he could on the back dues, and that in pursuance of such agreement he had sent $2.70 for the month of June and that he had not heard anything from it. Stated there might be a mistake, but that: "It was the least of my intention to let the policy lapse, for I am willing to pay it as fast as possible and send each assessment monthly. I am ready to pay July assessment when I find out where to send it. Kindly advise me what to do in this matter at your earliest convenience. Please help me to adjust this matter, for I don't want to stand suspended." This letter was not answered until September 23d, in which the general secretary seeks to justify the council in suspending him, and informing him that if he chose to "hold membership further that you will have to come in as a new member." On the day that he wrote to the general secretary (Aug. 9th) he also wrote to the secretary of the local lodge, to the same effect, and emphasized his protest at the attempt to suspend him after taking his money for the June assessment and agreeing with him as has been stated.

We think a fair interpretation of the conduct of defendant's officers with deceased in connection with the rules and by-laws, is that even though we should say that deceased was notified that he was suspended, yet there was no rightful suspension. In answer to the request of the secretary of the lodge, he sent his dues for June and yet in that month he was afterwards entered as suspended. The record shows there could not have been a rightful suspension at that time. He paid with the understanding that he would pay future dues promptly and liquidate back dues, which the lodge had been carrying, as rapidly as he could. It is clear that he did not desire to quit the association on / ugust 9, 1904, the date of his last letter, and that no valid forfeiture or suspension had been taken up to that time.

149 App—32

The parties have not discussed the question whether deceased could be held to have abandoned his contract after the correspondence ceased on August 9, 1904. We, therefore, will not say whether there must be a valid suspension or forfeiture taken before the association's liability ceases. If such liability may cease without such suspension or forfeiture, then the only question for trial will be whether deceased did abandon his contract and that each party so considered it.

The order granting a new trial will be affirmed. All concur.