## Knights of the Maccabees of the World v. Patton.

(Decided February 19, 1918.)

### Appeal from Floyd Circuit Court.

1. Insurance—Fraternal Insurance—Payment of Monthly Dues by Stranger for Benefit of Insured.—It is not material who pays the dues of a member in a fraternal insurance society so long as they are paid within the time provided by the laws of the order and accepted by it.

2. Insurance—Fraternal Insurance—Who Entitled to Sick Benefits.—Where a member in a fraternal insurance order had insurance on his life and was also entitled to sick benefits, the beneficiary in his life policy was not entitled by virtue of this fact alone to recover sick benefits to which the insured, or his estate in the event of his death, might have been entitled.

MAY & MAY, A. J. MAY, SAMUEL L. BLITZ and HOBBS & NORTH for appellant.

WM. DINGUS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In April, 1913, Samuel Patton became a member of the Knights of Maccabees at its local tent known as May tent No. 59, at Langley, in Floyd county. His membership, provided he complied with the laws of the order, entitled the beneficiary to one thousand dollars at his death. In addition to this his membership entitled him to sick benefits, provided he observed the laws of the order. He died on September 2, 1913, and after his death the beneficiary in the death certificate, Francis Patton, who is the appellee here, brought this suit to recover the amount of the death benefit, one thousand dollars, and twenty-five dollars on account of sick benefits.

On a trial of the case before a jury, there was a verdict in favor of the beneficiary for the two amounts claimed, and the Knights of Maccabees prosecutes this appeal, asking a reversal of the judgment upon the grounds, that it was not sustained by the evidence, that the instructions were erroneous and prejudicial, that the court erred in refusing a peremptory requested by it, and that the amount of the recovery is excessive.

Only two witnesses, Francis Patton, the beneficiary, and D. C. May, the record keeper of May tent No. 59, testified, and on the facts developed by the evidence there

is really only one question and that is, was Samuel Patton suspended for non-payment of his monthly dues? Upon this issue the evidence of Francis Patton consisted chiefly of statements made to her by D. C. May, and so we may say that whether the dues of the insured were paid or not depends entirely on the evidence of D. C. May.

Section 330 of the laws of the order provides: "A life benefit member failing to pay a monthly rate, per capita tax, or additional assessment within the month on the first day of which it is due, shall stand suspended, without notice, from all rights of life benefit membership and from all the privileges and benefits of his tent."

Section 331 of the laws provides: "A member suspended for failure to pay a monthly rate or additional assessment must be reported by name to the supreme record keeper by the tent record keeper in his monthly report; the record keeper shall also report the name of each member so suspended to the tent at its next regular review."

Other sections provide that a life benefit member suspended for non-payment of his monthly dues may be reinstated upon a new medical examination.

It will be seen from these laws that the monthly dues were payable within the month on the first day of which they were due, so that if a member failed to pay during any month the dues due on the first day of that month, he stood suspended at the end of the month and was thereby deprived of all the benefits the order agreed to pay, unless he should thereafter be reinstated.

There seems to be no question made about the fact that the dues of Patton were paid for April and May, but it is insisted that he failed to pay his dues for June, July and August, and consequently was suspended from the order on July 1st for failure to pay his dues due in June.

It appears that May, the record keeper, did not keep very correct records, and the records he did keep were destroyed by fire. The receipts that were given by him to Patton for payment of dues were also lost, or, at any rate, were not produced at the trial, and this, in connection with other matters to which we will presently call attention, makes it quite difficult to determine from the record in a satisfactory way whether the dues of Patton due in June were paid in that month, or whether the dues for July and August were paid in either of those months.

May testified that he was the record keeper of this local tent and that it was a part of his duty to keep all the records of the order at this tent, give receipts to the members as they paid their dues, and send the dues to the supreme tent at Detroit, Mich.; that Patton applied for and was admitted to membership on April 7, 1913, and got his certificate of membership a few days later; that he kept a record of the names of the members and the dues paid by each member, but that the record was destroyed in a fire.

That he had an agreement with the members that if they did not pay, he would pay their dues within the time prescribed and look to them to refund the money; that he sent in Patton's dues and wrote receipts usually on the first day of each month, commencing with April and ending with September 1st, making six payments in all that he had made for Patton to the supreme record keeper, who accepted the money; that he was never notified that Patton was suspended until after the proofs of his death claim were sent in.

That Patton was stricken with typhoid fever in August, and that he was at his house shortly before he was stricken with the fever, from which he died; that he told Francis Patton that the boy was liable to have typhoid fever and that he would pay the dues and let her pay him in the event he got sick.

He further said that Patton had not at that time been suspended for failure to pay his dues; that he did not remember that Patton had paid his June dues, but said that he had paid his dues for him and reported the same to the company in June, July and August, and that he wrote a receipt for him on the first day of each month; that he sent in his reports on the 15th of the month and that if he got the money from the persons whose dues he paid by the 15th it was all right, and if he didn't, he would pay the dues for them; that he had an arrangement with Patton to pay his dues for him in the event he failed himself to pay them.

He admitted that he wrote a letter to the supreme record keeper on August 6, 1913, enclosing a report of members suspended on account of failure to pay their dues for June, and that among these suspended members was the name of Patton and also his own name. He also identified a statement made by him in which he said that the June dues were paid by him on July first and the

July dues on August second. He testified, however, that his report that Patton was suspended for non-payment of dues was a mistake; that he put on the suspended report by mistake the names of the members who had paid their dues in place of the names of the members who had not, and on this list he had his own name and the names of several others whose dues had been promptly paid; that when a member was suspended for non-payment of dues, the member did not receive any notice of suspension, but the notice of suspension was sent to him as record keeper, and that he did not receive any notice of the suspension of Patton for June, or July, or August, or any notice that he had been suspended until after proofs of death had been sent to the order.

The substance of the evidence of this witness is that Patton himself paid his monthly dues for April and May, and that for June, July and August they were paid at the proper time for him by May, although May did not collect what he had paid until some time afterwards. We may here remark, however, that it is not material who paid the dues so that they were paid in time. It is also true that May reported to the order, on a blank form sent to him on which to make reports, that Patton and a number of others, including himself, had failed to pay their dues for June, but he testifies that this report was a mistake, caused by the fact that he inadvertently reported the names of the members who had paid their dues on a form intended for members who had not paid their dues. At any rate, we think there was sufficient evidence, tending to show that the dues of Patton had been paid each month as provided by the laws of the order, to take the case to the jury, and that it was for the jury to say, if properly instructed, whether the dues of Patton were paid in compliance with the laws of the order; and so the motion for a directed verdict was properly overruled.

The next assigned error relates to the instructions. It does not appear that any instructions were offered by counsel for the order, or that any exceptions were taken to those given by the court. We may, therefore, very safely assume that the instructions given by the court were satisfactory to counsel for the order, although some criticism is now made of them.

The instructions were too volumnious and covered some immaterial matters not in issue in the case, but upon the whole, except as to the twenty-five dollar sick benefit,

we do not think they were prejudicial to the substantial rights of the order. We say this because as stated there was really but one issue in the case, and that was whether the dues of Patton had been paid each month within the time prescribed by the laws of the order. This was, as will readily be seen, a very simple question of fact, depending entirely on the evidence of D. C. May; and upon this issue the jury were told that if they believed Patton had been suspended for non-payment of dues, they should find against the beneficiary.

And although all the instructions, except the one telling the jury that they should find for Francis Patton unless they believed Samuel Patton had been suspended, might well have been omitted, the giving of them, in view of the simplicity of the issue and the brevity of the testimony, could not have misled or confused the jury.

We think, however, that the court erred in telling the jury that they might find for Francis Patton the twenty-five dollar sick benefit. Francis Patton, the beneficiary in the insurance policy on the life of Samuel Patton, was not entitled by virtue of her interest in his life policy to the sick benefits to which he may have been entitled. These sick benefits, if he was entitled to any, belonged not to the beneficiary in his life policy, but to his estate and therefore the judgment to the extent of twenty-five dollars on account of sick benefits is erroneous. But as this error was due to an erroneous instruction, it will not be necessary to reverse the judgment as to the one thousand dollars, and on a return of the case the court will enter a judgment for Francis Patton for one thousand dollars, with interest from November 2, 1913.

Wherefore, the judgment is reversed, with directions to enter a judgment in conformity with this opinion.