## COLT ET AL. *v.* HICKS.

[No. 14,007.   Filed January 13, 1932.   Rehearing denied April 7, 1932.   Transfer denied June 17, 1933.]

French Clements, Charles M. LaFollette and Louis B. Ewbank, for appellants.

Ernest J. Crenshaw and Winfield K. Denton, for appellee.

WOOD, P. J.—Appellee brought this action as surviving widow and beneficiary of Lawrence Hicks, a member of the International Union of Steam Operating Engineers, against the appellants as members and representatives of said union, for death benefits alleged to be due her from said union because of the death of her husband. The cause was submitted to a jury for trial, which resulted in a verdict and judgment for appellee.

Appellee's complaint was in one paragraph alleging, in substance, that the International Union of Steam Operating Engineers was an unincorporated association engaged in the business of insuring the lives of its members; that on July 1, 1925, there was in force sections 2 and 9 of article 22 of the constitution, general laws and rules of said association which were set out in full in the complaint. Section 2 provided that six months after the increase in per capita tax went into effect, death benefits should be paid to beneficiaries of members in continuous good standing under the provisions of said section as follows and not otherwise; "Class 3. Beneficiaries of members in good standing for more than five years shall receive $500." Section 9, provided that the beneficiaries should be paid according to a table therein set out, unless otherwise specified by insured members, and first, if there was a widow and child or children surviving, the widow should receive all the benefit. That on February 23, 1915, her husband became a member of said association, paid the required admission fee and thereafter performed all the conditions precedent to be performed until March 7, 1929, when he died; that the appellee performed all conditions precedent to be performed on her part; that said per capita tax went into effect July 1, 1925; that Lawrence Hicks left surviving him the appellee and children; that in the month of March, 1929, the association denied all liability on the contract of insurance; that there were thousands of members of said association residing in every state in the United States and foreign countries; that it would be impracticable and impossible to join all of them as parties to this action; that the appellants were members of the association, and were made defendants to represent and act for all members of the association. Appellants filed a demurrer to this complaint which was overruled.

To the complaint the appellants filed an answer in five paragraphs. The first paragraph of answer was a general denial, the second, third, fourth and fifth paragraphs, set out in different particulars, how and in what manner the decedent had failed to comply with article 22 of the constitution, general laws and regulations of the union and had therefore forfeited his right to death benefits, making this article an exhibit to the answers; the fifth paragraph, also alleged decedent's failure to comply with articles 13 and 16 of the constitution, general laws and rules of said union, which were made a part of this paragraph of answer, thereby forfeiting his rights as a member. These by-laws or the substance thereof, so far as necessary, will be hereafter set out.

To these special paragraphs of answer the appellee filed a reply in two paragraphs; the first was a general denial. The second set out section one of article 16 relating to the payment of membership dues, and section 4 of article 13 relating to the payment of per capita tax by the local to the international union, contained in the constitution, general laws and rules of the organization; and alleging further, that with the knowledge and acquiesence of the international union, the local union of which decedent was a member, had followed a certain custom in the payment of dues and reporting of members in good standing to the international union, which custom and practice was relied upon by decedent, and that therefore appellants had waived any right that they might have to forfeit his membership in said union or the claim of his beneficiaries to death benefits.

To this second paragraph of reply appellants demurred upon the ground that it was a departure from appellee's original cause of action. This demurrer was overruled.

Appellants have appealed to this court assigning as errors: (1) That the court erred in overruling appel-

lants' demurrer to appellee's complaint; (2) that the court erred in overruling appellants' demurrer to appellee's second paragraph of reply; (3) that the court erred in overruling appellants' motion for a new trial.

Appellants alleged as their first ground of demurrer, that the court had no jurisdiction over their person. In the title of the complaint they were designated as members of the International Union of Steam Operating Engineers, and in the complaint it was alleged that this union was an unincorporated association engaged in the business of insuring lives of its members; also, that there were thousands of members of said association residing in every state in the United States and in foreign countries; that it would be impracticable and impossible to join all of the members as parties defendant to the action and that the defendants as members of said association were made defendants to the action to represent and defend for all members thereof. The record shows that the defendants made a full appearance to the action. The want of jurisdiction of the court over the person of the defendants does not appear in the complaint so there was no error in overruling appellants' demurrer on this ground. 1 Watson's Works Practice, §§121, 502.

As a second ground of demurrer appellants say, that there is a defect of parties defendant, in this, that the complaint shows that the defendants are sued as members of an unincorporated association, that said association is composed of members, local unions, local joint executive boards and state branches; that the state branch in the state of Indiana, the local union and the local joint executive boards within the state of Indiana and none of them had been served with process. This demurrer was insufficient in form to present any question pertaining to a defect of parties defendant, to the trial court for its consideration. A

demurrer for defect of parties must point out specifically defects complained of, giving the name or names of parties who should be joined, stating whether as plaintiffs or defendants. "This is because the demurrer for such cause performs the same office as a plea in abatement performs where the defect of parties does not appear upon the face of the complaint." *Boseker* v. *Chamberlain* (1903), 160 Ind. 114, 66 N. E. 448; 1 Watson's Works Practice, §§ 275 and 574, and authorities there cited. The court did not err in overruling the demurrer on this ground.

As their third ground of demurrer, appellants say that the complaint does not state facts sufficient to constitute a cause of action, in support of which, appellants filed three separate paragraphs of memoranda. Any error dependent upon the first two paragraphs of memoranda are waived by failure of counsel for appellants to discuss them in their brief. The third paragraph of memoranda to this ground of demurrer is, that: "The complaint shows on its face that the per capita tax, together with the provisions of article 22 of the constitution, general laws and rules of the association, providing for the payment of death benefits, went into effect on July 1, 1925; that the plaintiff's decedent died on the 7th day of March, 1929; that only beneficiaries of members in good standing for more than five years after July 1, 1925, are entitled to recover from the defendants the amount which the plaintiff seeks to recover in her complaint. (A) Statutes and ordinances are presumed to be prospective in their action and are thus construed unless expressly shown to mean the contrary. (B) By-laws must be similarly construed." This memoranda is based upon and requires a consideration of sections 1, 2 and 5 of article 22 of the constitution, general laws and rules of the union. Sections 1 and 2 are as follows: "Section 1.

For the purpose of creating a Death Benefit Fund, the per capita tax paid the International Union of Steam Operating Engineers is hereby increased twenty-five cents (25c) per month per member. This increase of twenty-five cents (25c) shall be deposited in a Death Benefit Fund and is to be used for no other purpose than for the payment of death benefits and the expense necessary to operate said department. (This article becomes operative July 1, 1925.)

"Sec. 2. Six months after the increase of the per capita tax goes into effect, death benefits shall be paid to beneficiaries of members in continuous good standing under the provisions of this section as follows and not otherwise.

Class 1. Beneficiaries of members in good standing for a period of six months to two years shall receive $100.00.

Class 2. Beneficiaries of members in good standing from two to five years shall receive $250.00.

Class 3. Beneficiaries of members in good standing for more than five years shall receive $500.00."

It is very apparent that these sections were adopted for the purpose of establishing a death benefit fund, classes among the members of the union to whom payable, and the amount payable to each class. Counsel for appellant insists that these sections of the by-laws must be construed prospectively and not retrospectively, that under that rule no death benefits were payable until six months had elapsed from July 1, 1925, and that decedent did not come within class three of section two because his death occurred within five years from July 1, 1925. The sections of the by-laws above quoted do not attempt to deprive the decedent or his beneficiaries of any vested rights or privileges already existing as a member of the union, but created new and additional rights in its already existing members in good standing

at the time of its adoption, on the payment of per capita tax of twenty-five cents per month.

The scheme, purpose and object which it was proposed to accomplish by the adoption of these by-laws must be determined from all their provisions. In fact the by-laws themselves provide that they shall be construed together. Section 1 establishes the per capita tax for the purpose of creating a death benefit fund to be applied to no other use. In order to permit the fund to accumulate, section 2 provides that death benefits shall not be paid to any member until six months after the increase in per capita tax. If, as appellants contend, only those members who have been in continuous good standing for a period of five years from July 1, 1925, were entitled to $500 death benefits, then that provision of section 2 delaying the payment of benefits for a period of six months is surplusage and has no meaning.

It is self-evident from the language used, that if it was intended that the five-year period should be computed from July 1, 1925, that the by-law would have so stated, and the fact that it did not, justifies the single conclusion, that the section is a classification of the members for the purpose of payment of death benefits to be determined from the date upon which they originally became members of the union. This is further apparent for the reason that section 5 of article 22, provided that if a member was suspended from membership and later reinstated, that he must be a member in good standing six months before benefits would be paid, and that his beneficiaries would be entitled to the amount only in his class for the length of time he was a member in good standing after such reinstatement, which provision would be unnecessary if appellants' position is correct. Taken as a whole and construed together as the law requires them to be, we

do not find that the sections of the by-laws under consideration are equivocal or uncertain. But if they were, still appellants' position would be untenable, for where insurance contracts are uncertain or equivocal they will be construed against the insurance company, for they are prepared by the company itself, their effect carefully weighed and determined upon, and the parties do not deal upon an equal footing. They are liberally construed in behalf of the insured so as to consummate their purpose, doubts are to be resolved in favor of the insured and strict construction will be invoked against forfeitures. *Federal Life Ins. Co.* v. *Kerr* (1909), 173 Ind. 613, 89 N. E. 398, 91 N. E. 230; *Supreme Council, etc., Legion* v. *Grove* (1911), 176 Ind. 356, 96 N. E. 159, 36 L. R. A. (N. S.) 913; *Modern Woodmen, etc.* v. *Miles* (1912), 178 Ind. 105, 97 N. E. 1009; *Atkinson* v. *Indiana, etc., Co.* (1924), 194 Ind. 563, 143 N. E. 629; *Schmidt* v. *German Mutual Ins. Co.* (1892), 4 Ind. App. 340, 30 N. E. 939. This rule applies to beneficial associations. *Brotherhood, etc.* v. *Corder* (1912), 52 Ind. App. 214, 97 N. E. 125. The court did not err in overruling the demurrer to the complaint on this ground.

The overruling of appellants' demurrer to appellee's second paragraph of reply to their second, third, fourth and fifth paragraphs of answer is the next error assigned for reversal. The ground of demurrer was, that appellee's second paragraph of reply was a departure from the original cause of action. As heretofore stated this paragraph of reply alleged a waiver of the right of the union to declare a forfeiture by appellee to death benefits. Whether this ruling of the court was error is not necessary for us to decide. The court, during the trial of the cause, announced that the question of waiver set out in the second paragraph of reply did not enter into the controversy and no evi-

dence was introduced in support of the facts therein alleged, so if the ruling on this demurrer was error it was harmless. *Adams* v. *Pittsburg, etc., Co.* (1905), 165 Ind. 648, 74 N. E. 991; *Leonard* v. *City of Terre Haute* (1911), 48 Ind. App. 104, 93 N. E. 872; *Smith* v. *Frantz* (1915), 59 Ind. App. 260, 109 N. E. 407.

The overruling of appellants' motion for a new trial is the last error assigned.

The first cause assigned for a new trial, and discussed by appellants in their brief is, that the amount of the recovery is too large. The questions there presented were fully disposed of in our discussion of appellants' third ground of demurrer to the complaint so further consideration is unnecessary.

The second cause for a new trial is, that the verdict of the jury is not sustained by sufficient evidence; third, that the verdict is contrary to law; fourth, errors of law occurring at the trial, under which appellants alleged error of the court in refusing to admit in evidence defendants' exhibit No. 2, which was a receipt book kept by the local union, also, error of the court in refusing to direct a verdict for the appellants, and refusal to give certain instructions, tendered by appellants, and the giving of certain instructions by the court of its own motion, and instructions 1, 3, 4, 6, 7, and 8, tendered by appellee.

Defendants' Exhibit No. 2 was an official membership book in which was kept a record of the payments of dues to the local union. As their reason for the admission of the exhibit in evidence, counsel for appellants stated that, a book similar to the exhibit was carried by each member and it contained a notice that unless the book was stamped, dues paid, for the date on which he died, death benefits would not be paid under the by-laws. It was agreed by both appellant and appellee that the decedent had not paid his

dues to the local union for the months of January and February, or for the month of March previous to the 7th day thereof, when he died. The by-laws relating to the payment of dues were admitted in evidence, each member was charged with notice of their provisions. What the effect of a member's failure to pay his dues would have on his right to death benefits was a legal question for the court to determine. This evidence would have been cumulative only, inasmuch as any facts contained in the exhibit were admitted or already proved by other competent evidence, so the court did not err in excluding it.

By instruction No. 6, the court was told that an unincorporated union could not be sued as such, but that an action could be maintained against some of its members as representatives of the union. Also that the provision of the by-laws, providing that no suit could be brought against members of the local union, and that no members should be liable for death benefits was void. Sec. 277, Burns 1926, Acts 1881, p. 240, provides that, "Of the parties in the action, those who are united in interest must be joined as plaintiffs or defendants; but, if the consent of anyone who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason therefor being stated in the complaint, and where the question is one of a common or general interest of many persons, or where the parties are numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole."

This section was formerly section 19 of the code of civil procedure, approved June 18, 1852; 2 Ind. Statutes, 1852, p. 31; and from its original enactment up to the present time has never been changed or amended.

As heretofore observed, this action is not against the defendants as individuals, but as members of the Inter-

national Union of Steam Operating Engineers. The complaint alleged facts bringing the case within the classes comprehended by the statute, and clearly indicating that the defendants are sued, not in their individual capacity, but as representing and defending for all members of the union. We do not find that an application of Sec. 277, *supra,* to a set of facts identical to those involved in this case has been made by the courts in this state. We are therefore required to look to the authorities and courts of other states for information and guidance.

At common law an unincorporated association cannot be sued in its society or company name, but it is necessary that all members be made parties to the action, since such bodies, in the absence of statute, have no legal entity distinct from that of their members. 5 C. J., §118, p. 1369. Equity, recognizing the fact, that in many instances, this rule was harsh and would defeat the enforcement of legal and equitable rights, adopted the equitable doctrine of parties by representation, and in the enactment of the above section of our code, the legislature evidently intended to and did incorporate in it, that equitable doctrine. The statute has been so recognized and applied to different sets of facts in the following cases in this state. *Tate* v. *Ohio, etc., Co.* (1858), 10 Ind. 174, 71 Am. Dec. 309; *Sourse* v. *Marshall* (1864), 23 Ind. 194; *Blair* v. *Shelby* (1867), 28 Ind. 175; *Zuelly* v. *Casper* (1903), 160 Ind. 460, 67 N. E. 103, 63 L. R. A. 133; *Gaiser* v. *Buck* (1931), 203 Ind. 9, 174 N. E. 83. "This section of the code (says Pomeroy) is a re-enactment of a rule which had prevailed in equity, and is to receive a construction which will make it identical with the pre-existing doctrine." Pomeroy, Code Rem., 4th Ed., sec. 289.

After having discussed some of the exceptions to the common-law rule, Justice Story summarized them in

the following language: "The most usual cases arranging themselves under this head of exceptions are, (1) where the question is one of a common or general interest, and one or more sue, or defend for the benefit of the whole; (2) where the parties form a voluntary association for public or private purposes, and those, who sue, or defend, may fairly be presumed to represent the rights and interests of the whole; (3) where the parties are very numerous, and although they have, or may have separate, distinct interests; yet it is impracticable to bring them all before the court." Story's Equity Pleading, 10th Ed., §87, p. 102. And at section 107 of the same volume, the reason for the rule as applied to the second class of cases above suggested is set forth as follows: "The second class of cases, constituting an exception to the general rule, and already alluded to, is, where the parties form a voluntary association for public or private purposes, and those who sue or defend, may fairly be presumed to represent the rights and interests of the whole. In cases of this sort the persons interested are commonly numerous, and any attempt to unite them all in a suit would be, even if practicable, exceedingly inconvenient, and would subject the proceedings to the danger of perpetual abatements, and other impediments, arising from intermediate deaths, or other accidents, or changes of interest."

In 22 Ency. of Plea & Prac., p. 247, the application of the rule is stated in this language: "The equitable doctrine of parties by representation, embodied in most if not all of the codes, that when the question is one of a common or general interest to many persons, or where the parties are very numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole, is applicable in actions against unincorporated societies, and a few members are permitted to represent all the others as

defendants when their number is greater or when some of them are unknown."

In Niblack, Ben. Soc., pp. 181 and 183, the rule applicable in cases like the present is thus expressed: "If the members of a society are so numerous that they cannot be made parties to a cause with any chance of bringing it to a hearing, in consequence of abatement and like difficulties, suit may be brought in the name of one or more for the use of all, or two or three members may be made defendants to represent the interests of all."

The same rule is announced in Corpus Juris where many authorities are collected. 5 C. J., §122, p. 1371. See also 47 C. J., §139, p. 66.

In the case of *Pearson* v. *Anderburg* (1905), 28 Utah 495, 80 Pac. 307, the appellant, as administratrix, brought suit against the appellees as members of an unincorporated association for sick benefits accruing to her husband as a member, previous to his death, judgment was recovered by appellant and appellees appealed upon the ground that the action could not be maintained against an unincorporated association by making a part of the members defendants for the whole. The court held that this position was not tenable and sustained the judgment.

In the case of *Bransom* v. *I. W. W.* (1908), 30 Nev. 270, 95 Pac. 354, the appellant brought an action against the Industrial Workers of the World, a voluntary unincorporated association, making some of its members parties defendant to the action, for damages suffered because of a conspiracy to boycott and injure appellant's business. A motion to dismiss the action because of a defect of parties defendant was sustained. The statute relating to parties was almost identical with our own. The court in reversing the case, in the course of its opinion, said: "We think it was the intention of the Legislature, by this provision of the statute, to make the

equity rule applicable to all proceedings in the courts of this state, whether the same be of a legal or equitable nature. Under our Code provision, there is but one form of civil action, and legal and equitable distinctions, so far as practice is concerned, are largely, if not entirely, done away with. To hold that the defendant organizations cannot be sued without including all members, which are so numerous, scattered and difficult to ascertain might cause such hardship and delay as would amount to a denial of justice. It is hard to conceive of any case to which the statute would be more applicable in its provisions that where the parties are numerous one or more may sue or defend for all."

In the case of *Platt* v. *Colvin* (1893), 50 Ohio St. 703, 36 N. E. 735, in a well considered opinion where many authorities are reviewed, the equitable doctrine is recognized and adhered to.

One of the most profound and illuminating discussions of the equitable doctrine and its application to present day conditions is contained in the opinion of Chief Justice Taft in the case of *United Mine Workers* v. *Coronado Coal Co.* (1922), 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762. We quote from the opinion: "Undoubtedly at common law, an unincorporated association of persons was not recognized as having any other character than a partnership in whatever was done, and it could only sue or be sued in the name of its members, and their liability had to be enforced against each member. (Citing authorities.) But the growth and necessities of these great labor organizations have brought affirmative legal recognition of their existence and usefulness and provisions for their protection, which their members have found necessary. Their right to maintain strikes when they do not violate law or the rights of others, has been declared. The embezzlement of funds by their officers has been espe-

cially denounced as a crime. The so-called union label, which is a quasi trademark to indicate the origin of manufactured product in union labor, has been protected against pirating and deceptive use by the statutes of most of the states, and in many states authority to sue to enjoin its use has been conferred on unions. They have been given distinct and separate representation and the right to appear to represent union interests in statutory arbitrations, and before official labor boards. We insert in the margin an extended reference, furnished by the industry of counsel, to legislation of this kind. More than this, equitable procedure adapting itself to modern needs has grown to recognize the need of representation by one person of many, too numerous to sue or to be sued (citing authorities) ; and this has had its influence upon the law side of litigation, so that, out of the very necessities of the existing conditions and the utter impossibility of doing justice otherwise, the suable character of such an organization as this has come to be recognized in some jurisdictions, and many suits for and against labor unions are reported in which no question has been raised as to the right to treat them in their closely united action and functions as artificial persons capable of suing and being sued. It would be unfortunate if an organization with as great powers as this International Union has in the raising of large funds and in directing the conduct of 400,000 members in carrying on, in a wide territory, industrial controversies and strikes, out of which so much unlawful injury to private rights is possible, could assemble its assets to be used therein free from liability for injuries by torts committed in course of such strikes. To remand persons injured to a suit against each of the 400,000 members to recover damages and to levy on his share of the strike fund would be to leave them remediless."

The following, among other cases, adhere to the ap-

plication of the statute above announced. *McKenzie* v. *L'Amoureaux* (1851), (N. Y.), 11 Barb. 516; *Van Houten* v. *Pine* (1882), 36 N. J. Eq. 133; *Gorman* v. *Russell* (1860), 14 Cal. 531; *State ex rel* v. *Webb* (1893), 97 Ala. 111, 12 So. 377, 38 Am. St. Rep. 151; *Faber* v. *Faber* (1907), 76 S. C. 156, 56 S. E. 677.

Since the distinction between actions at law and suits in equity were abolished in the code adopted in 1852, it has been held that statutes similar to sec. 277, *supra*, apply to actions at law as well as suits in equity. 2 Ind. Statutes, 1852, part 2, sec. 1. Burns 1926, sec. 256, Acts 1881 (special session), page 240. 21 C. J., sec. 293, p. 293; 47 C. J., sec. 139, p. 66; Pomeroy, Code Rem., 4th Ed., sec. 290; *Platt* v. *Colvin, supra; Branson* v. *I. W. W., supra.*

Appellants have cited some authorities in support of their position, but we do not think that they are controlling under the facts of the instant case.

Section 12 of article 22 of the by-laws provides that "no suit shall be brought against a local union or member and no local union or member thereof shall be liable for the death benefit herein provided for." It also provides that the general secretary-treasurer shall have authority to investigate the legality of any claim. We find nothing more in the by-laws regarding the determination of the validity of a claim for death benefits. The uncontradicted evidence shows that the claim for death benefits for Lawrence Hicks was referred to the general secretary-treasurer, who, on March 15, 1929, before the commencement of this action, denied any liability on the part of the International Union of Steam Operating Engineers. It was stipulated in the by-laws that upon the death of a member a certain sum of money would be paid to his beneficiaries, upon condition that he had paid certain dues therein provided. This amounted to a valid contract to

pay money based upon a consideration. Under such circumstances, it has long been the rule in this state, that a provision in the by-laws of such an association as the appellant, prohibiting the bringing of an action for benefits is not valid. *Bauer* v. *Samson Lodge* (1885), 102 Ind. 262, 1 N. E. 571; *Supreme Council* v. *Garrigus* (1885), 104 Ind. 133, 3 N. E. 818, 54 Am. Rep. 298; *Supreme Council* v. *Grove, supra; Kempton Lodge* v. *Mozingo* (1913), 180 Ind. 566, 103 N. E. 411; *Locomotive Engineers, etc., Ass'n.* v. *Higgs* (1922), 79 Ind. App. 427, 135 N. E. 353.

Whether that portion of the instruction to the effect that no member of the union "shall be liable for the death benefit provided for in said by-laws is void and of no force and effect" was erroneous, is not necessary for us to decide. The verdict returned by the jury was against the defendants as representatives of the union, the judgment conforms to the verdict. The cause was not tried upon the theory of the individual liability of appellants and no effort was made either in the verdict or judgment to bind them as such, so even though that portion of the instruction above quoted may have been erroneous, it does not appear that the jury was influenced or misled to the injury of appellants and that statement was therefore harmless. *Worley* v. *Moore* (1884), 97 Ind. 15; *Putt* v. *Putt* (1897), 149 Ind. 30, 48 N. E. 356, 51 N. E. 337; *Van Vleck* v. *Thomas* (1893), 9 Ind. App. 83, 35 N. E. 913; *Pearsons* v. *Anderburg, supra.* The giving of this instruction did not constitute reversible error.

Appellants also complain of the court's action in giving to the jury instructions No. 1, 3, 4, 7 and 8, requested by appellee. Appellants do not suggest or discuss, how or in what manner instruction No. 8 was erroneous, in points and authorities

of their brief, so any question as to the correctness of this instruction is waived.

The substance of instructions No. 1, 3, 4 and 7, was as follows: Instruction No. 1 informed the jury that it was the province of the court to construe the by-laws of the union and if it found from the evidence that Lawrence Hicks was a member, that his dues were paid to and including the month of December, 1928, and for five years previous thereto; that he died on the seventh day of March, 1929; that the union within 60 days after his death denied all liability on grounds other than proofs of death or insufficiency thereof; that appellee had knowledge of this fact and that she was the wife of decedent, then the verdict should be for appellee.

In instruction No. 3, the jury was told that a member of the union had the entire month in which his dues became due to pay the same; that if decedent died on March 7, 1929, before his dues were paid for that month, that the union denied all liability for death benefits, because of such death during such month, of which fact appellee had knowledge, then she was excused from paying dues for said month, and the union could not forfeit her right to benefits because of non-payment of dues for that month.

In instruction No. 4, the court said to the jury, that so far as the international union was concerned, payment by the local union of the decedent's dues, out of its own funds for the months of January and February, 1929, to the international union, was equivalent to payment by himself, and that the international union could not forfeit appellee's right to benefits because decedent had failed to pay his dues to the local union.

In instruction No. 7, the jury was advised that if decedent was a member of the union in good standing for more than five years previous to his death then appellee would be entitled to recover the sum of $500,

under the by-laws, from which should be deducted the sum of $4.50 for dues for the months of January, February and March, 1929; to the sum computed should be added interest at 6 per cent per annum from the date the benefits became due and payable; that if liability was denied then the sum became due and payable from the date of such denial. The same question is presented by instruction No. 7 as was contained in appellant's third ground of demurrer to the complaint, which has been fully discussed and disposed of. The court did not err in giving this instruction.

Section 1 of article 16 of the by-laws provided that a member should pay his dues up to date, and if in arrears for more than three months, he should not be considered in good standing; if in arrears for more than three months he was deemed in bad standing, and should stand suspended from all privileges of membership, including attendance at meetings, but not expelled. This by-law also provided that the local union should pay per capita tax to the international union until notified by the local union of the member's suspension.

Section 3 of article 22, defined a member in good standing, as one who had not been reported as suspended or expelled from the local to the international union for any cause whatever, and one who had his dues paid to the local union to the date of his death.

In construing these by-laws it is necessary that we keep in mind the rules applied by the courts and heretofore referred to.

The evidence which is not in conflict shows that at the time of the death of Lawrence Hicks his name was carried upon the roll of members in good standing in his local union, and the local union never had reported him to the international union as suspended for any cause. In addition to this, the local union, as provided

in its by-laws, had paid the international union his per capita tax for the months of January and February, and they were never returned by it. This was equivalent to payment by himself and whether he had reimbursed the local union for the dues thus paid, previous to his death would not give to the international union the right to forfeit his death benefits. *Knights, etc.* v. *Patton* (1918), 179 Ky. 410, 200 S. W. 614; *National, etc.* v. *Landrum* (1924), 204 Ky. 176, 263 S. W. 747; *Puls* v. *Grand Lodge* (1904), 13 N. D. 559, 102 N. W. 165; *Walton* v. *Fraternal, etc., Ass'n.* (1910), 149 Mo. App. 493, 130 S. W. 1124; *Order, etc.* v. *McAdam* (1903), 125 Fed. 358; 2 Bacon, Ben. Soc. (New Ed.), sec. 383; 19 R. C. L., §73, p. 1272. Furthermore, it appears from the evidence that Lawrence Hicks died on March 7, 1929, which was within the three months' period, which, under the provisions of section 1, article 16 of the by-laws, was required to elapse before he could be suspended for non-payment of dues. In order to work a forfeiture of death benefits as contended for by appellants, it would be necessary to give full force and effect to that clause of section 3 of article 22, which provides that a member to be in good standing must have his dues paid to the local union to the date of his death, thus ignoring the effect of the preceding language of that section and all of section 1 of article 16. Forfeitures are not favored by the courts; to declare a forfeiture in this case would require us to act contrary to all rules of construction adopted for the guidance of courts under such circumstances.

There was no condition in the by-laws requiring the dues to be paid in advance so that decedent had the entire month in which to pay them and was therefore not delinquent for his March dues when he died. 4 Cooley's Briefs on Ins. (2nd Ed.), p. 3724, 2 Bacon Ben. Soc. (New Ed.), p. 767, sec. 389. The court did

not commit error in giving instructions No. 1, 3 and 4.

It necessarily follows that the court did not err in refusing to direct a verdict for the appellants at the close of all the evidence given in the cause.

Appellants complain of the refusal of the court to give to the jury instructions No. 1, 2, 3, 4 and 6, tendered by appellants. An examination of the record discloses that the instructions tendered were not signed by appellants or their counsel as required by law and are therefore not properly presented for our consideration. Subd. 4, sec. 584 and sec. 586 Burns 1926; *Board of Commissions* v. *Legg* (1886), 110 Ind. 479, 11 N. E. 612, and authorities there cited.

Appellants have waived any error committed by the court in giving instructions on its own motion, by failure to discuss them in their brief.

Finding no reversible error the judgment is affirmed.