**CALVARY BAPTIST CHURCH OF MARION, INDIANA, Petitioner,**

v.

**James O. JOSEPH, Respondent.**

**27S04–8804–CV–420.**

Supreme Court of Indiana.

April 26, 1988.

Albert C. Harker, Kiley, Osborn, Kiley, Harker, Michael & Certain, Marion, for petitioner.

Bruce A. McTavish, Guerrero, Guerrero & Guerrero, Marion, for respondent.

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Fourth District Court of Appeals. Plaintiff James Joseph (Joseph) brought action in the trial court against Calvary Baptist Church (church) for personal injury he suffered due to alleged negligent conduct of a fellow church member in setting up a ladder. The trial court granted summary judgment for the church and Joseph appealed. The court of appeals reversed the granting of summary judgment, finding there were material issues of fact to be determined, and finding that all unincorporated associations including churches are amenable to suit by their members for tortious acts. *Joseph v. Calvary Baptist Church* (1986), Ind.App., 500 N.E.2d 250. Petition to transfer is brought by the church, claiming the court of appeals erred in interpreting and applying Indiana law on this subject. This court finds the trial court properly entered sum-

mary judgment and accordingly vacates the opinion of the court of appeals and affirms the trial court.

The facts are not in dispute. On July 7, 1982, James Joseph, a deacon of the Calvary Baptist Church, and several other church members were helping to repair the roof of the church building. The roof was divided into an upper and lower portion. Joseph was working on the lower portion with fellow member Willie Wofford. Another church member, Al Green, was responsible for keeping the roofers supplied with shingles. Periodically Green moved the ladder the roofers used to ascend to the roof so he could deliver shingles to workers who needed them. The last time he moved the ladder he thought it felt "uncomfortable" when he set it up. After the men worked for some time, they agreed to take a break. Joseph stepped onto the ladder and it began to fall. Joseph fell onto a concrete sidewalk. He broke his heel and suffered possible internal injuries as a result of the fall.

The court of appeals conceded the common law substantive rule, followed by the majority of jurisdictions, is that a member of an unincorporated association injured due to the tortious conduct of another member cannot sue the association. However, the court of appeals, relying on *O'Bryant v. Veterans of Foreign Wars* (1978), 176 Ind.App. 509, 376 N.E.2d 521, found Indiana had rejected that rule.

In *O'Bryant,* the plaintiff brought an action against the Veterans of Foreign Wars, an unincorporated association in which he was a member, seeking damages for bodily injury allegedly caused by the association's negligence. As the record did not disclose the nature of the negligent conduct claimed as the proximate cause of O'Bryant's injury, the court of appeals stated:

It obviously attempts to present only the abstract question of whether a member of an unincorporated association can maintain an action against the association for bodily injuries allegedly the proximate result of a person or persons en-

gaged in some activity on behalf of the association under circumstances which would make the association liable were the plaintiff not a member of the association. We shall answer the question without pausing to consider whether it is properly presented.

*O'Bryant,* 176 Ind.App. at 510, 376 N.E.2d at 521.

The trial court in *O'Bryant* found that under no circumstances can a member of an unincorporated association sue the association for negligence. The rationale followed by the trial court was that an unincorporated association, like a business partnership, has no legal entity or existence apart from its members. It cannot sue or be sued in its own name but only in the names of its partners or members. Its members are engaged in a joint enterprise in which each member has the legal right to exercise control over the operation of the association, thus each member as to each other member is both principal and agent in matters involving the association's activities.

*O'Bryant* was based primarily on Indiana Trial Rules 17(B) and 17(E). Trial Rules 17(B) and (E), were enacted by the 1969 session of the General Assembly and later adopted without change by order of the Indiana Supreme Court, effective January 1, 1970. These rules provide:

17(B) Capacity to sue or be sued. The capacity of a party to sue or be sued shall be determined by the law of this state, including its conflict rules, except that a partnership or unincorporated association may sue or be sued in its common name.

17(E) Partnerships and unincorporated associations. A partnership or an unincorporated association may sue or be sued in its common name. A judgment by or against the partnership or unincorporated association 'shall bind the organization' *as if it were an entity.* A money judgment against the partnership or unincorporated association shall not bind an individual partner or member unless he is named as a party or as a

member of a class in an appropriate action (Rules 23 and 23.2).

The court of appeals in *O'Bryant* found that since these rules were adopted by the legislature and the supreme court, they could be effective as rules of procedural law as well as rules of substantive law and therefore change the substantive law to authorize a member of an association to sue and recover from the association in tort. *O'Bryant,* 176 Ind.App. at 513, 376 N.E.2d at 523. The *O'Bryant* court reasoned that the association then became a separate and distinct entity from the persons who were the members. *Id.* "As such artificial entities they can serve as the principals of their officers, agents, and employees without need to resort to the fiction that the members of the association are the principals." *Id.*

■ We reject such a broad application of these rules and expressly overrule *O'Bryant.* Trial Rules 17(B) and (E) were directed to the suability of unincorporated associations as parties. We do not see that it was the intention of the legislature nor this court in authorizing these rules to change the substantive rule of non-liability of associations to members for torts committed by other members. Trial Rule 17, titled "Parties," covers whether a particular party has the capacity to sue or be sued. It defines who may be a party plaintiff or defendant and addresses in subsections (B) and (E) partnerships and unincorporated associations. Trial Rule 17 is an extension of early equity principles, statutes, and rules providing for unincorporated associations to sue or be sued in their own name.

■ The strict common law rule was that an unincorporated association could not sue or be sued in its association name as it did not exist as an entity outside its membership. Action had to be maintained by or against the individual members. This presented many and varied problems dependent on the nature of the association, its size demonstrated by the number of its members, the relationship any individual member had to control the activities of the association, and the ability to discover who

the members were and where they might be found. The harsh impact of this strict common law procedural rule resulted in a doctrine arising in equity of parties by representation in cases where strict adherence to the common law rule would defeat the enforcement of legal and equitable rights. In discussing the equitable doctrine and its application to present day conditions, Chief Justice Taft stated in *United Mine Workers v. Coronado Coal Co.* (1922), 259 U.S. 344, 388–389, 42 S.Ct. 570, 575–576, 66 L.Ed. 975, 986:

> It would be unfortunate if an organization with as great power as this International Union has in the raising of large funds and in directing the conduct of four hundred thousand members in carrying on, in a wide territory, industrial controversies and strikes, out of which so much unlawful injury to private rights is possible, could assemble its assets to be used therein free from liability for injuries by torts committed in course of such strikes. To remand persons injured to a suit against each of the 400,000 members to recover damages and to levy on his share of the strike fund, would be to leave them remediless.

Legislatures, including the Indiana General Assembly, responded to this equitable doctrine by authorizing suits by and against representative persons. The intention was to incorporate in the code the equitable rule of procedure which authorized suits by and against representatives of the members of an unincorporated association of a large number of persons. *Slusser v. Romine* (1936), 102 Ind.App. 25, 31, 200 N.E. 731, 734; *Colt v. Hicks* (1932), 97 Ind.App. 177, 188, 179 N.E. 335, 340, *trans. denied.* Thus, Burns Indiana Statutes Annotated 1933 provided in § 2–220 (277):

> Persons united in interest—Joining as plaintiffs or defendants—Exception—When one may sue for all. Of the parties in the action, those who are united in interest must be joined as plaintiffs or defendants; but, if the consent of anyone who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stat-

ed in the complaint, and when the question is one of a common or general interest of many persons, or where the parties are numerous and it is impractical to bring them all before the court, one or more may sue or defend for the benefit of the whole.

In *Colt v. Hicks*, suit against the international union of steam operating engineers was approved by this court pursuant to this statute. In *Slusser v. Romine*, action by an attorney for fees due and owing from a contract with the Order of Owls found service on the local officers as representatives of the organization suitable where the Order of Owls was found to be an organization having local chapters called "nests" in various states of the United States, in other countries and its national office, called the home nest, in another state.

Notably these authorities set out exceptions to the general rule regarding suability of associations and expressly did not change the general rule of the nature of an association of members that did not meet the structure of the exceptions. The focus of the exceptions was on the suability of these associations in their own name or by representation either as plaintiff or defendant.

Trial Rules 17(B) and (E) thus brought the problem full circle and provided that an unincorporated association including Calvary Baptist Church could be sued in its own name. This did not change the general rule in Indiana, still adhered to by most jurisdictions, that members of an unincorporated association cannot sue the association for tortious acts of one or more of its members. The theory of the general rule is that the members of an unincorporated association are engaged in a joint enterprise. The negligence of each member in the prosecution of that enterprise is imputable to each and every other member so that the member who has suffered damages through the tortious conduct of another member of the association may not recover from the association for such damage. It would be akin to the person suing himself as each member becomes both a

principal and an agent as to all other members for the actions of the group itself.

An exception to this general rule had been recognized on a case by case basis in some jurisdictions as necessary to avoid sacrificing reality to theoretical formalism. *Marshall v. International Longshoremens and Warehousemens Union* (1962), 57 Cal.2d 781, 22 Cal.Rptr. 211, 371 P.2d 987; *White v. Cox* (1971), 17 Cal.App.3d 824, 95 Cal.Rptr. 259. In *Marshall,* the California Supreme Court recognized the exception in the case of a large international labor union. Although the court in *Marshall* indicated the exception may apply in the case of large unincorporated associations akin in their structure to labor unions, the court nevertheless limited the opinion to the labor union. The test they set out for breaking the veil of the structure of the unincorporated association was: (1) whether the association possesses a separate legal existence from its members, and (2) whether the members retain direct control over the operations of the association. *Marshall,* 22 Cal.Rptr. at 214, 371 P.2d at 990. In *White,* the California Court of Appeals looked to the nature of the association, to the applicable statutory scheme, and to the role of the members in the association as compared with a corporation when it created an exception to the general non-liability rule. Other jurisdictions have followed the rationale of *White* and *Marshall* with regard to labor unions, finding that the member and the association are distinct since the union represents the common or group interest of the members as distinguished from their personal or private interest. The organized institutional activity of the international union contrasts with the wholly individual activity of the members. *See United States v. White* (1944), 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542, 152 A.L.R. 1202; *Marshall, supra.*

■ Although we recognize the wisdom of applying an exception to the general rule in the case of large unincorporated associations such as labor unions having a hierarchy of structure that drastically changes the relationship of membership to association and the control that a member has in its affairs, we find it clearly demonstrated that no such question was presented in regard to the Calvary Baptist Church and its members.

The evidence showed without conflict that the Calvary Baptist Church was a community congregational church existing only in the persons of its members. Their purpose in associating was to worship God by providing spiritual stewardship and to receive the benefits to themselves of the teachings of Jesus Christ or the uplifting of their spiritual needs. The members, through the association, maintained themselves including the church building in which they worshipped. The resources used for this endeavor were the contributions or free will offerings made by the members in the form of giving of money or services, such as repairs to the roof of the building by the men of the congregation when this incident occurred. The evidence before the trial court was by deposition of Reverend Roy L. Foard, a minister at the church, who stated, "The men of Calvary ... decided the church was leaking and we decided we should put a roof on. We didn't have the money to put it on, so ... the men were going to do it." The men of the church who congregated to do this included James Joseph, who was a deacon and therefore a member of the church's board.

No fact can be presented that would be in conflict with the clear indication of these facts. The men repairing the church roof were among those who composed the church and were on a joint enterprise for each and all of their purposes. No inference is presented from which it could be determined that the church was a separate entity from any one of the members, giving a member status to sue in tort. The testimony by deposition of Reverend Wilson, the Pastor of Calvary Baptist Church, did not conflict with this conclusion. He stated he encouraged Joseph and others to enter on the church premises to further church purposes, namely to provide a new roof for the church. This was only his conclusion as to what the legal effect of his exhorting of the men might have. Further, there is no evidence Reverend Wilson was anything more than a minister employed by the

church as a spiritual leader and teacher and held no position of management or control of the business affairs or maintenance of the church building.

We accordingly vacate the opinion of the court of appeals and affirm the trial court.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., dissents with separate opinion.

DICKSON, J., not participating.

DeBRULER, Justice, dissenting.

I read Indiana's Trial Rules 17(B) and 17(E) as mandating that unincorporated associations, be they religious or otherwise, may now be sued as any other person or legal entity, and that a judgment may be taken against such unincorporated associations. If the Calvary Baptist Church in this case is the common name of an unincorporated religious association, it is subject to a civil suit and will be bound by a judgment against it in that name as in the case of natural persons and corporations. This of course does not answer the questions of who may sue the church and what for.

The definition of the tort duty of a church to its members and the duty of one member to another member should be profoundly effected by the manner in which they have chosen to structure their relationships. The legal obligations of a church operating as a not-for-profit corporation to its members would ordinarily be governed by the Indiana Not-For-Profit Corporation Act of 1971, and the charter of the corporation. The legal obligations of a church operating as a voluntary association for religious purposes to its members would be governed by I.C. 23-10-2-1 to -22, and the constitution and by-laws of the association. If a charter or set of by-laws can reasonably be construed to mean that by taking up membership in an association, a person consents to assuming the risk of tortious injury through the conduct of fellow members or employees of the association, when engaged in association activities, then a suit by a member against the associ-

ation or a fellow member should be foreclosed. In the absence of such a provision, I do not believe that mere membership can reasonably be regarded as constituting such a consent or waiver of right. Under my view of this case, the grant of summary judgment by the trial court should be set aside and the case remanded for further consistent proceedings.