## Department of Welfare of Commonwealth of Kentucky v. Farmer's Committee.

May 29, 1942.

Alexander & Reed for appellant.

McDonald & Boaz and J. E. Warren for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming in part and reversing in part.

This case presents the question can the Department of Welfare subject the total disability benefits under certain life insurance policies to the maintenance and support of an insured after he has been committed to an asylum; or shall such payments be used for the support of the mother of the insane insured?

On March 10, 1920, Robert H. Farmer insured his life for $3,000 in the Prudential Insurance Company of America, naming his mother, Celie, as beneficiary. On Dec. 15, 1922, by indorsement on the policy, the beneficiary was changed to the insured's brother, John Z. Farmer. On July 19, 1922, Robert insured his life for $1,000 with the Sovereign Camp of Woodmen of the World, naming his brother, John, as beneficiary.

On Sept. 16, 1933, Robert was adjudged insane and was committed to the asylum in Hopkinsville where he is now. He is approximately 57 years old at this time. Robert's father died on Aug. 11, 1935, leaving no estate, and was survived by a widow, who is now more than 80 years of age, a helpless invalid without property. John, the beneficiary of both policies, died on Aug. 27, 1939, survived by a widow, Cora H. Farmer, to whom he devised all of his property, consisting of a farm of 150 acres and a small amount of personalty. His widow, Cora, was the beneficiary of John's life insurance, amounting to between $7,000 and $8,000.

W. O. Cowell, a business associate and friend of John but not related to him or his widow, Cora, testified Robert told him that his mother started carrying Robert's insurance, but could not keep it up, and that John carried it for "his and his mother's benefit." The record shows that Robert was never married, lived with his parents and although his earnings were modest and he had no property, he cared for his parents and contributed his share to the family up-keep by earnings from the sweat of his brow until his health began to fail.

Soon after John's death it was discovered each policy contained a disability clause and by the terms thereof mental incapacity constitutes total disability. The Prudential policy provided for the waiver of premiums and for payment to the insured of one-tenth of the face of the policy each year of total disability upon receipt of proof thereof, not exceeding 10 years. The Woodmen policy provided merely for payment to the insured of one-half of the face of the policy upon proof of total disability, but did not waive the premiums. W. T. Edwards, committee for Robert, made proof of total disability for his ward to the Prudential, and that company on April 19, 1940, paid him $2,556, which included $345.46 representing premiums paid after Robert was committed to the asylum on Sept. 16, 1933.

The committee instituted this action on May 8, 1940, against Cora H. Farmer, individually and as executrix of John, and Celie Farmer and the Department of Welfare, asking that each answer and set up her or its claim to the fund paid him by the Prudential, and seeking the direction of the chancellor as to what action to take relative to the Woodmen policy. Each of the defendants filed answer and claimed the proceeds of the two policies.

Cora, individually and as executrix of John, pleaded that Celie was in indigent circumstances and that under Section 331f, Kentucky Statutes, it was Robert's duty to support her, and in carrying out his duty he insured his life and made Celie the beneficiary of the Prudential policy; that Robert becoming unable to carry that policy had the beneficiary changed to John, and orally agreed with John that he (John) pay the premiums on both policies and use the proceeds therefrom to reimburse himself for the premiums paid and for the support of their mother, Celie; that from the date of such oral agreement all benefits accruing under the policy were pledged and were in lien to John to carry out his part of the agreement.

It was further pleaded Cora and John had supported Celie for sixty months at a cost of $30 per month; that John had paid the Prudential in premiums $1,015.02, which with interest amounted to $1,605.37; that the premium on the Woodmen policy was $30 per year and as the beneficiary named is dead and as the insured was insane and could not change the beneficiary, the proceeds under the terms of the policy would go to the next of kin of the insured at his death. The court was asked to direct the committee to accept 50% of the policy in satisfaction of the total disability of insured, as provided therein, and to direct same to be paid to her as John's executrix, as reimbursement for premiums paid and for supporting Celie; and to surrender the policy rather than to carry it for the remaining $500. Cora asked that the $2,556 received by the committee from the Prudential be paid to her to first reimburse John's estate for premiums paid by him to the Prudential and that the balance apply on the expense of caring for Celie; that the remaining monthly installments due on this policy be paid to her for the support and care of Celie.

Celie pleaded that under Section 681c-21, Kentucky Statutes, the proceeds of a fraternal insurance policy cannot be subjected to the debts of the insured or of the beneficiary, and that the proceeds of the Woodmen policy should be used for her support as she was next of kin to the insured who is hopelessly insane.

The Welfare Department traversed the pleadings of Cora and Celie and pleaded that under Sections 216aa-37 and 216aa-38 Kentucky Statutes, Robert was indebted to it for his maintenance in the asylum, which was reason-

ably worth $30 per month, and his committee should be required to pay it the sum of $2,320; that the disability payment should be collected under the Woodmen policy and the committee be directed to use the proceeds thereof for the support of Robert and that this policy be surrendered; that the proceeds of both policies by reason of Robert's disability is part of his estate and should be used for his maintenance and support. It further pleaded the alleged contract between Robert and John is within the statute of frauds, also that same is barred by the 5 year statute of limitations; that the payment of the premiums by John was voluntary and cannot be recovered. Replies completed the issues but the statute of limitations was not pleaded against the claim of the Welfare Department.

The chancellor held Robert and John entered into an agreement which was tantamount in legal contemplation to an assignment and pledge of the benefits under the Prudential policy to John to reimburse him for the premiums paid, with the balance to be devoted to the support of Celie; that upon Robert's total disability, the proceeds of the policy came into existence as the property of Robert but impressed with a lien for the repayment to John and for the support of Celie, and same was not subject to Robert's debts under Section 216aa-37. This resulted in Cora recovering the proceeds of that policy as well as the future monthly payments therefrom for the support of Celie. The Woodmen policy was ordered surrendered upon the payment of the $500 for total disability, which sum was adjudged free of insured's debts and the committee was directed to use whatever part of same was necessary in his discretion for the support of Celie.

The questions raised by the appeal are: 1. Is there any proof in the record to support the chancellor's finding that Robert and John entered into an agreement that the policies were to be put in lien to reimburse the latter for the payment of premiums and to devote the balance to the support of their mother, Celie? 2. Is the insured or is his beneficiary entitled to the proceeds under the disability provisions of the policies? 3. Can the executrix recover the amount John paid in premiums on the Prudential policy?

This is not a suit by one child against another for contribution for support of an indigent parent as was

Wood v. Wheat, 226 Ky. 762, 11 S. W. (2d) 916, where it was held no such contribution could be enforced without notice to the other child that he would be expected to contribute. Here the widow and the mother of John bottomed their right of recovery upon the alleged oral agreement between Robert and John, which it is insisted impressed the proceeds from the disability payments with a trust. John was beneficiary in both policies, but as such took no vested interest in the policies during the life of the insured and only had an expectancy therein, since each policy allowed the insured to change the beneficiary. Twyman v. Twyman, 201 Ky. 102, 255 S. W. 1031; Colovos' Adm'r v. Gouvas, 269 Ky. 752, 108 S. W. (2d) 820, 113 A. L. R. 871. There might be some plausibility in the argument that the death benefits of the policies were impressed with the trust if the evidence established the alleged agreement between Robert and John, and if the proceeds in dispute were death benefits.

Neither Cora nor Celie are competent to testify for themselves as to conversations and transactions with Robert that such an agreement was made between the brothers, because Robert was insane at the time these two women testified, and Section 606, Subsection 2 of the Civil Code of Practice makes their testimony incompetent. The exceptions filed to their testimony on this point should have been sustained. With their testimony eliminated there is left only the testimony of W. O. Cowell and Robert Kelley, which is to the effect that Robert told them John was paying the premiums on this insurance. This falls far short of establishing an agreement between the brothers whereby the proceeds of the policies were impressed with a trust.

Another reason for holding these proceeds were not impressed with a trust is that they were not death benefits but were disability payments. As John was not aware that the Prudential policy provided for disability payments, as is shown by his continuing to pay the premiums after Robert's disability, it is obvious that such benefits were not in the contemplation of the brothers at the time the alleged agreement was made.

Benefits payable on account of sickness and physical disability are for the benefit of the insured and are generally payable to him and the beneficiary is not entitled thereto. 2 Couch on Insurance, Section 312, p. 844; Knights of Maccabees of the World v. Patton, 179 Ky.

410, 200 S. W. 614. Here the policies so specified, and the beneficiary is chargeable with notice of the contents thereof. 2 Couch on Insurance, Section 306, p. 810.

Under the terms of the Prudential policy the payment of the premiums stopped with the insured's insanity, but the provisions in the Woodmen policy did not suspend the payment of premiums during insured's total disability. Cora, the executrix of John, is seeking to recover $1,015.02 in premiums she alleges John paid on the Prudential policy for Robert from March 10, 1922, to March 10, 1939, with interest thereon of $590.35. She relies upon Newton v. Hicks' Adm'r, 282 Ky. 226, 138 S. W. (2d) 329, as her authority for recovering these premiums with interest from the dates of payments. The Hicks case holds that where one who has no insurable interest in the life of another pays the premiums in good faith under an agreement which both he and the insured thought valid, he may recover such premiums with interest, and the 5 year statute of limitations did not limit such recovery.

Inasmuch as the Prudential refunded $335.52 representing premiums paid after Robert became insane, appellant makes no objection to this sum being allowed John's executrix, but it does object to interest being paid thereon, because the payments of these premiums were not necessary to keep the policy in force and were voluntarily made by John with no resulting benefit to Robert. Appellant's position is correct and no interest should be allowed on this $335.52.

There is a paucity of evidence relative to the payment of these premiums. However, we know they were paid and furthermore several canceled checks were produced showing payments of several premiums to the Prudential after Robert was adjudged insane. The testimony of W. O. Cowell and Robert Kelley is that prior to his commitment to the asylum Robert told them John was carrying this insurance for him. We further gather from the testimony of these two witnesses that some time before his mind failed Robert lived with Mr. Cowell, who resided on John's farm, and that Robert was in reality provided a home by his brother. One of John's canceled checks shows a premium payment of $53.01 on April 7, 1931. There was no testimony whatever that Robert paid these premiums, and knowing that John paid one before Robert became insane and that he was practically

providing a home for Robert and was beneficiary under the policy, we cannot do otherwise than accept the uncontradicted testimony of Cowell and Kelley and hold that the premiums were paid by John.

Under the authority of Newton v. Hicks' Adm'r, 282 Ky. 226, 138 S. W. (2d) 329, John's executrix is entitled to recover the premiums paid on the Prudential policy from Dec. 15, 1922, the date John was named beneficiary, until Sept. 16, 1933, the date Robert was adjudged insane and the premiums ceased; and each payment will bear interest from the date it was made.

That part of the chancellor's judgment decreeing that the proceeds of the Prudential policy came into existence impressed with a lien for the repayment to John and for the support of Celie is reversed with directions to enter one ordering the committee (after the payment of certain items set out in the original judgment about which there was no dispute), to pay John's executrix $335.52 without interest; and to further pay her the amounts of the premiums paid by John on the Prudential policy with interest as indicated in the preceding paragraph. The balance of the $2,556 collected by the committee from the Prudential he will pay to the Department of Welfare to apply on its account for maintaining Robert. The Woodmen policy should be canceled as adjudged by the chancellor and whatever sum the committee receives from the total disability of Robert under it, he may in his reasonable discretion use for the maintenance and support of his ward. The judgment will provide that all funds payable in the future to Robert for total disability under the Prudential policy shall be used by the committee to bear the expense of the Department in maintaining Robert in the asylum as such payments will be only $24.36 a month.

The judgment is affirmed in part and reversed in part with directions to enter one in conformity with this opinion.