**William BOWLING, Plaintiff–Appellant,**

v.

**Roger HOLDEMAN, Jr. d/b/a Winchester Speedway, Defendant–Appellee.**

**No. 1–380A61.**

Court of Appeals of Indiana,
First District.

Dec. 30, 1980.

Charles R. Sheeks, Hilgedag, Johnson, Secrest & Murphy, Indianapolis, for plaintiff–appellant.

Bruce W. McLaren, Warner, Peckinpaugh, Wallace & McLaren, Muncie, for defendant–appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

This is an appeal from the Randolph Circuit Court by plaintiff–appellant William Bowling (Bowling), from an adverse judgment on the evidence, entered by the court at the close of Bowling's evidence, in favor of defendant–appellee Roger Holdeman, Jr. d/b/a Winchester Speedway (Holdeman).

We affirm.

### STATEMENT OF THE EVIDENCE AND RECORD

On October 2, 1976, Bowling attended automobile races at the Winchester Speedway in Randolph County, Indiana, as a paying spectator. At the conclusion of the races, as he was leaving the Speedway grounds on his motorcycle, a child darted in front of him. His unsuccessful attempt to avoid the child caused Bowling to fall and he was injured.

Bowling filed this action on December 10, 1976, for damages for personal injuries

against Holdeman, who was styled in the complaint as "Roger Holdeman, Jr. d/b/a Winchester Speedway." He proceeded upon a claim that the "defendant negligently and wilfully failed and refused to provide adequate parking, safety precautions, traffic control and spectator control" in and around the site of the racing event. Trial was held on October 22, 1979. At the close of Bowling's evidence, the trial court, upon Holdeman's motion, entered a judgment on the evidence for Holdeman for the stated reason that the evidence did not disclose that Winchester Speedway was operated by Holdeman as an individual, but did show it was operated by a corporation of the name "Hero Promotions, Incorporated," and therefore, Holdeman was not the proper party defendant.

Insomuch as the appeal comes to us upon a judgment on the evidence rendered at the close of plaintiff's evidence, it is necessary to examine all the pleadings, procedures, and evidence relative to the question of ownership and control of Winchester Speedway.

Examination of the complaint discloses that in paragraph three thereof, Bowling alleged that "on or about October 2, 1976, plaintiff attended an automobile racing event sponsored, organized and given by defendant at Winchester Speedway." This is the only reference to ownership and control of the Speedway stated in the complaint. In his first defense in his answer to Bowling's complaint, Holdeman stated "1. This defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in rhetorical paragraphs 1 and 3 of plaintiff's complaint." This answer, under Ind.Rules of Procedure, Trial Rule 8(B)(2), is treated as a denial.

The record of the pretrial conference conducted on September 11, 1979, contains only the following reference to the issues:

"The Court finds that the parties agree that the defendant's legal duty was to exercise reasonable care to provide and maintain premises that were reasonably safe for the business invitee, such as

plaintiff, and the question in the case is whether or not the defendant did or did not exercise the care and prudence which a reasonable person would have exercised under the same or similar circumstance. Defendant relies upon the defense of contributory negligence and plaintiff's alleged incurred or voluntary assumption of risk."

The evidence reveals the following as the total evidence concerning Holdeman's activities in regard to the accident, or his ownership of the Winchester Speedway: After the accident Holdeman was called to the scene, whereupon a conversation ensued between Bowling and Holdeman. Holdeman told Bowling to go home and he would take care of it. Bowling was reluctant to do so until he had a witness to the conversation because he did not want to leave the scene of an accident. Holdeman told Bowling he would take full responsibility. Holdeman testified at trial that Hero Promotions, Incorporated, was the owner of the Winchester Speedway on October 2, 1976, that he owned 75 percent of the stock, and he was president.

Prior to trial, interrogatories were filed by Bowling and answered by Holdeman on February 10, 1977. In those answers to interrogatories Holdeman stated, under oath, that his position and relationship to Winchester Speedway was that of "owner/promoter." These interrogatories and answers thereto, pursuant to the trial court's order and practice in the Randolph Circuit Court, were kept in filing cabinets used for storing deposition and discovery papers, but were not kept in the case file. Further, the filing of such discovery documents was not noted on the court's Bench Docket. The interrogatories and answers thereto were neither offered into evidence by Bowling, nor ever admitted at trial. They were later referred to in the unverified motion to correct errors, unsupported by affidavits. For the first time, after the overruling of the motion to correct errors, they were made part of the record by a special bill of exceptions on March 4, 1980, certified by the court at Bowling's request.

## ISSUES

The sole issue on appeal is the propriety of the trial court's action in entering a judgment on the evidence. Bowling assigns five reasons which he contends demonstrate that the trial court's ruling was erroneous. Because of the overlapping substances of the assignments, and manner in which arguments were presented in the briefs, we have reorganized and restated the arguments as follows:

I. Holdeman committed a fraud upon Bowling by his false answers to the interrogatories in which he represented that he was owner of Winchester Speedway, and Holdeman should be estopped from asserting at the trial that Hero Promotions, Incorporated was the owner. Further, he was surprised by such actions.

II. Regardless of whether or not Hero Promotions, Incorporated owned Winchester Speedway, Holdeman is personally liable for the injury because he was president, was the owner of 75 percent of the stock, and had made a commitment to assume liability.

III. The trial court should have added Hero Promotions, Incorporated, as a party defendant, or substituted it as a party defendant.

IV. That the naming of Holdeman d/b/a Winchester Speedway as defendant was merely a misnomer, as he is one and the same party as Hero Productions, Incorporated, and Holdeman had appeared and defended.

V. Holdeman had an obligation to come forward and correct the matter of the suit against the wrong party.

## STANDARD OF REVIEW

A judgment on the evidence is proper only if the plaintiff fails to present evidence of probative value on one or more of the elements necessary to a recovery on the claim made. A review of a ruling on a motion for judgment on the evidence is limited to a consideration of the evidence, and all reasonable inferences drawn therefrom, most favorable to the party against whom the motion is made. Ind.Rules of Procedure, Trial Rule 50; *Koroniotis v. La-Porte Transit, Inc.*, (1979) Ind.App., 397 N.E.2d 656.

## DISCUSSION AND DECISION

*Issue I. Interrogatories*

Ind.Rules of Procedure, Trial Rule 33(B) permits answers to interrogatories to be used at the trial to the extent permitted by the rules of evidence. However, discovery material, including interrogatories, does not automatically become evidence. Before answers to the interrogatories can be considered by the trier, they first must be introduced into evidence. *Heilig v. Studebaker Corporation*, (10th Cir. 1965) 347 F.2d 686. Had this been done, the admission by Holdeman in the answers to interrogatories that he was owner/promoter of Winchester Speedway would have been sufficient evidence for Bowling to avoid a judgment on the evidence. Instead, Bowling called Holdeman as a witness and interrogated him as to the ownership of Winchester Speedway, and Holdeman answered that Hero Promotions, Incorporated was the owner. At this point Bowling made no attempt to interrogate Holdeman as to the contradiction between his testimony at trial and his answers to interrogatories. Bowling did not offer the interrogatories into evidence, but rested with the record disclosing only that Hero Promotions, Incorporated was the owner of Winchester Speedway; that Holdeman was president and owned 75 percent of the stock. Therefore the interrogatories may not be considered for the purpose of determining whether there was sufficient evidence to avoid a judgment on the evidence. *Johnson v. Taylor Building Corporation*, (1978) Ind. App., 371 N.E.2d 404.

While Bowling does not so label his argument in regard to the interrogatories, he essentially argues that the false answers to the interrogatories amount to misconduct by the prevailing party, causing surprise and preventing a fair trial under Ind.Rules of Procedure, Trial Rule 59(A)(1). It is again noted that the interrogatories were

not introduced into evidence and were therefore outside the record. T.R. 59(G)(1) provides as follows:

"When a motion to correct error is based upon evidence outside the record, the motion shall be supported by affidavits showing the truth of the grounds set out in the motion and the affidavits shall be served with the motion."

Though referring to the interrogatories, Bowling's motion to correct errors filed December 6, 1979, was neither verified, nor supported by affidavits. Further, the interrogatories and answers thereto were not attached to the motion. The motion to correct errors was overruled on December 19, 1979. The interrogatories and answers thereto first appeared on March 4, 1980, in a special bill of exceptions certified by the trial court for inclusion in the transcript. Since the interrogatories and answers were not before the court in its ruling on the motion for judgment on the evidence, or in its ruling on the motion to correct errors, they may not be considered for the first time on appeal.

*Issue II. Personal liability of Holdeman*

■ In Indiana the tort of negligence consists of three elements: (1) a duty owed to plaintiff by the defendant, (2) a failure of the defendant to conform his conduct to the standard of care required by that relationship, and (3) injury caused to the plaintiff by the defendant's failure. *Koroniotis, supra.*

The trial court's act in granting the motion for a judgment on the evidence was directed by the failure of evidence on element No. 1: duty. If Holdeman did not own and control the Winchester Speedway, he then owed no duty to Bowling.

■ The record is silent as to any act, or failure to act, on the part of Holdeman from which it could be inferred that he personally had committed some negligent act or omission causing the injury. The fact that he was president of Hero Promotions, Incorporated, and owned 75 percent of its stock, in and of itself, forms no basis of liability. At common law a corporate officer, stockholder, director, agent or employee is not personally liable for the torts of a corporation or of any other agent merely because of his office or holdings. Some additional connection with the tort is required. *Birt v. St. Mary Mercy Hospital of Gary, Inc.,* (1977) Ind.App., 370 N.E.2d 379; 6 I.L.E. *Corporations* Sec. 157; Ind. Code 23–1–2–6(h); and *See generally* 19 C.J.S. *Corporations* Sec. 845, for analysis.

■ In the alternative, Bowling contends that the statements made by Holdeman: that when he came to the scene of the accident he would take care of everything, impose personal liability upon him. Bowling argues that, by that statement, Holdeman acknowledged personal liability and agreed to pay the damages. Upon our reading the statements, in context, we cannot agree with Bowling. The transcript reveals that the alleged statements were entered into evidence only by Bowling's testimony. Summarized, the testimony shows that a little boy darted out in front of Bowling, who unsuccessfully swerved to miss the child, and Bowling fell off and under his motorcycle. He thought he had killed the child, who had been knocked unconscious and lay bleeding with people caring for him. The child's father, very upset, came upon the scene and started cursing, threatening to kill the S.O.B. that hurt his child. Bowling was scared. After a while the child regained consciousness and was taken to the hospital. At this juncture Holdeman appeared; a verbatim account of Bowling's testimony then proceeds as follows:

"A. I asked him, you know, if he was going to call the police, and he said, no that he would take care of it and for me to go on home. And I said, 'No, I don't want to do this.' And he said, 'Well,' he said, 'I–just go on home, I'll take care of it.' And I said, 'No. Let me get someone here to witness you saying that,' and I said, 'I'll–I'll do that, but I'm not going to leave the scene of an accident.'

Q. Now, did–did Mr. Holdeman make a statement to you that he would take full responsibility?

A. Yes, he did."

We read nothing in the foregoing exchange which could be construed to mean that Holdeman had acknowledged personal liability, and had agreed to pay Bowling for his damages. Rather, our impression of the meaning of the conversation is that everyone, including Bowling, was deeply concerned about the injury to the child, and Bowling was afraid that he could be charged with the criminal offense of leaving the scene of an accident if he left before the police came. Holdeman's assurances were simply to the effect that the injured Bowling should return home, and that he would take care of the details of the accident, including the matter of Bowling's leaving the scene.

*Issue III. Substitution of parties*

■ Under this argument Bowling contends that the trial court erred in not granting his motion for the substitution, as a party, Hero Promotions, Incorporated, for Holdeman, or adding Hero Promotions, Incorporated as a party defendant, which he made in argument on the motion for judgment on the evidence.

We note that the alleged injury occurred on October 2, 1976, and the statute of limitation is, of course, two years. The motion was made at trial on October 22, 1979, more than three years later.

Ind.Rules of Procedure, Trial Rule 17(A) provides that every action shall be prosecuted in the name of the real party interest. Ind.Rules of Procedure, Trial Rule 25 provides for substitution of parties occasioned by the death, incompetency of the original party, or by a transfer in interest. Ind. Rules of Procedure, Trial Rule 15(C) provides that an amendment of a pleading relates back to the commencement of the action. The court, in the case of *Gibson v. Miami Valley Milk Producer, Inc.,* (1973) 157 Ind.App. 218, 299 N.E.2d 631, held that where the substituted or additional party was a separate and distinct entity, the addition or substitution of a party to a lawsuit constituted a new and independent claim, which did not relate back, under T.R. 15(C), to the beginning of the case, and the trial rule did not permit the addition of an entirely new party after the statute of limitation had run.

Here, Holdeman, as an individual, and Hero Promotions, Incorporated, a corporation, were two separate legal entities. Bowling argues that Holdeman, and Hero Promotions, Incorporated, are, in essence, one and the same. He refers again to the interrogatories and the answers thereto to bolster his claim. To repeat, as they were not admitted into evidence, they cannot now be considered. Even assuming that under some other facts, under some theory of piercing the corporate veil, Bowling could be correct, the record in this case does not show facts sufficient to justify such a conclusion. The record discloses that Bowling simply sued the wrong party.

*Issue IV. Misnomer*

■ Bowling argues that the naming of defendant "Roger Holdeman, Jr. d/b/a Winchester Speedway" was merely a misnomer. We disagree. Hero Promotions, Incorporated, is a separate and distinct legal entity, and even the ownership of the stock is not coextensive with Holdeman. Considering only the evidence properly before us, we can neither accede to this argument, nor may we speculate upon it.

*Issue V. Obligation on Holdeman to correct the matter of a suit against wrong party*

■ Under this argument Bowling contends that Holdeman had an obligation to raise the question of the suit being brought against the wrong party. It is stated in *Gibson, supra,* 157 Ind.App. at 229, 299 N.E.2d 631, that "[t]he burden is on the complainant to bring suit against the proper party." *See also Ryser v. Gatchel,* (1972) 151 Ind.App. 62, 278 N.E.2d 320. We therefore conclude that this argument is untenable.

**1016** ■

For the above reasons, this cause is affirmed.

Affirmed.

YOUNG, P. J. (participating by designation) and RATLIFF, J., concur.