Marta HANSON, Appellant–Plaintiff,

v.

ST. LUKE'S UNITED METHODIST CHURCH, John Street, Pete Burks, Liz Tondra, Charles C. Brandt, Tom Eggers, Scott Alexander, Barb Jackson, Merv Warnock and April Sterling, as Trustees of St. Luke's United Methodist Church, Appellees–Defendants.

No. 49A02–9609–CV–597.

Court of Appeals of Indiana.

July 11, 1997.

Rehearing Denied Sept. 3, 1997.

Lee C. Christie, Cline Farrell Christie & Lee, Indianapolis, for appellant-plaintiff.

Theodore J. Blanford, DeMoss & Associates, Indianapolis, for appellees-defendants.

## OPINION

BAKER, Judge.

Appellant-plaintiff Marta Hanson appeals the trial court's grant of summary judgment in favor of appellees-defendants St. Luke's United Methodist Church (St.Luke's) and John Street, Pete Burks, Liz Tondra, Charles C. Brandt, Tom Eggers, Scott Alexander, Barb Jackson, Merv Warnock and April Sterling, as Trustees of St. Luke's United Methodist Church (Trustees). Specifically, Hanson contends that the trial court erred in applying the rule that a member of an unincorporated association cannot sue the association for the negligence of another member to preclude her claim against St. Luke's and the Trustees.

## FACTS

The facts in this case are not in dispute. In 1993, Hanson was a member of St. Luke's, an unincorporated association[1] located in In-

dianapolis, Indiana. At that time, St. Luke's had approximately 3,800 members, including nine volunteer trustees. The Trustees were not elected by the church's membership; rather, they were nominated and approved by various groups within the church.

On the evening of December 22, 1993, Hanson attended a social function at St. Luke's which was sponsored by the Nora Toastmasters. Following the meeting, Hanson was walking across the parking lot towards her car when she slipped and fell on ice and snow on the lot. As a result of her fall, Hanson suffered injuries.

Thereafter, on March 9, 1995, Hanson filed a complaint against St. Luke's and the United Methodist South Indiana Conference, Inc. (Conference), alleging that they were negligent and careless in failing to inspect and maintain the parking lot, failing to discover the dangerous condition, failing to remove foreign substances and failing to warn her of the danger. In response, St. Luke's filed a motion for summary judgment on the basis that Hanson, as a member of an unincorporated association, could not maintain a lawsuit against that association. The Conference also filed a motion for summary judgment, claiming that it was a separate entity from St. Luke's and, therefore, owed no duty to Hanson. On December 22, 1995, Hanson amended her complaint to include the Trustees as defendants and filed a motion to dismiss the Conference. On May 24, 1996, the trial court entered summary judgment in favor of St. Luke's and, thereafter, clarified its summary judgment order to include the Trustees. Hanson now appeals.

## DISCUSSION AND DECISION[2]

■ Hanson contends that the trial court erred in granting summary judgment in favor of St. Luke's and the Trustees. Initially, we note our standard of review. When reviewing the grant of summary judgment, our standard is the same as the trial court. *Fetz v. Phillips,* 591 N.E.2d 644, 646

---

1. An unincorporated association is a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective. BLACK'S LAW DICTIONARY 1531–32 (6th ed.1990).

2. We held oral argument in this cause on June 17, 1997, in Indianapolis.

(Ind.Ct.App.1992). Summary judgment is proper when the designated pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hamilton v. Roger Sherman Architects Group, Inc.,* 565 N.E.2d 1136, 1137 (Ind.Ct. App.1991); Ind.Trial Rule 56(C). When the parties do not dispute the facts material to the claim, our task is to determine whether the trial court correctly applied the law to the undisputed facts. *State ex rel. Indiana State Bd. of Dental Examiners v. Judd,* 554 N.E.2d 829, 830 (Ind.Ct.App.1990). This court will affirm the grant of summary judgment if it is based upon any legal theory which is consistent with the facts disclosed in the record. *Hupp v. Hill,* 576 N.E.2d 1320, 1323 (Ind.Ct.App.1991).

### I. St. Luke's

■ First, Hanson challenges the trial court's grant of summary judgment in favor of St. Luke's. Specifically, Hanson argues that the trial court should have applied an exception to the rule prohibiting members of an unincorporated association from maintaining lawsuits against the association because the reasons behind the rule do not exist in the case of an association as large and structured as St. Luke's. Additionally, Hanson argues that public policy concerns mandate that she be able to maintain her lawsuit against St. Luke's.

■ As a general rule, a member of an unincorporated association cannot sue the association for the tortious acts of one or more of its members. *Calvary Baptist Church v. Joseph,* 522 N.E.2d 371, 374 (Ind.1988). The reason for the general rule, as described by our supreme court in *Calvary,* is to avoid collusive lawsuits:

> The theory of the general rule is that the members of an unincorporated association are engaged in a joint enterprise. The negligence of each member in the prosecution of that enterprise is imputable to each and every other member so that the member who has suffered damages through the tortious conduct of another member of the association may not recover from the asso-

ciation for such damage. It would be akin to the person suing himself as each member becomes both a principal and an agent as to all other members for the actions of the group itself.

*Id.* at 374–75. Based upon this reasoning, the *Calvary* court held that a member of a small, community church who had been injured when he fell off a ladder while assisting in repairing the church's roof could not sue the church in its own name. Although the court applied the general rule in *Calvary,* it did note that some jurisdictions had adopted an exception to the general rule where the unincorporated association has "a hierarchy of structure that drastically changes the relationship of membership to association and the control that a member has in its affairs." *Id.* at 375. The court also noted the wisdom in such an exception because it avoids "sacrificing reality to theoretical formalism." *Id.* Nevertheless, the court declined to adopt the exception where the facts clearly did not support one. *Id.*

The exception noted in *Calvary* is based on two California cases. Specifically, in *Marshall v. Int'l Longshoremen's and Warehousemen's Union,* 57 Cal.2d 781, 22 Cal. Rptr. 211, 371 P.2d 987 (1962), the California Supreme Court recognized an exception to the general rule in the case of a labor union. In *Marshall,* a labor union member filed a complaint against the union after he was injured by a fall in the union's parking lot. After the union obtained summary judgment on the grounds that a member of an unincorporated association cannot sue the association, the union member appealed. *Id.* at 988. On appeal, the California Supreme Court discussed the rationales behind the general rule and the rule's application in the case of labor unions. The court determined that in many aspects labor unions differ from other unincorporated associations. In particular, the court found:

> Structurally and functionally, a labor union is an institution which involves more than the private or personal interests of its members. It represents organized, institutional activity as contrasted with wholly individual activity.... The union's existence in fact, and for some purposes in law,

is as perpetual as that of any corporation, not being dependent upon the life of any member. It normally operates under its own constitution, rules and by-laws which, in controversies between member and union, are often enforced by the courts. The union engages in a multitude of business and other official concerted activities, none of which can be said to be the private undertakings of the members. Duly elected union officers have no authority to do or sanction anything other than that which the union may lawfully do; nor have they authority to act for the members in matters affecting only the individual rights of such members.

*Id.* at 989 (*citing United States of America v. White*, 322 U.S. 694, 701–702, 64 S.Ct. 1248, 1252–53, 88 L.Ed. 1542 (1944)). The court then determined that the general rule should not apply under the following circumstances: 1) when the unincorporated association has a legal existence separate from its members; and 2) when the members do not exercise control over the operations of the association. *Id.* 22 Cal.Rptr. at 214, 371 P.2d at 990. Based upon this test, the court held that the union member could maintain his claim against the labor union.

Similarly, in *White v. Cox*, 17 Cal.App.3d 824, 95 Cal.Rptr. 259 (1971), the California Court of Appeals applied the exception in the case of a condominium association. In *White*, a condominium owner sued his condominium association for injuries he suffered after tripping over a water sprinkler in one of the complex's common areas. *Id.* 95 Cal. Rptr. at 259. After the association was granted summary judgment, the owner appealed. In its opinion, the California appeals court discussed the two-part test enunciated in *Marshall* and noted the further erosion of the general rule in the years since *Marshall* was decided. In particular, the *White* court found that "[s]ince 1962, the trend of case law has flowed toward full recognition of the unincorporated association as a separate legal entity." *Id.* 95 Cal.Rptr. at 261. The court then examined the nature of condominium complexes, including the fact that they are operated by management associations controlled by a governing body, which generally "functions as a distinct and separate

personality from the owners themselves" and that condominium owners generally only have a tenancy-in-common interest in the complex's common areas. *Id.* at 262. Based upon the characteristics of the association, the court determined that condominium associations could be considered separate legal entities from their members. With regard to the members' control over the association, the court held as follows:

> To use the language of the *Marshall* opinion, we would be sacrificing reality to theoretical formalism to rule that White had any effective control over the operation of the common areas of Merrywood, for in fact he had no more control over operations than he would have had as a stockholder in a corporation which owned and operated the project.

*Id.* at 263. Thus, the court held that the condominium owner could maintain a claim against the condominium association. *Id.* at 263.

Since *Calvary Baptist Church v. Joseph*, 522 N.E.2d 371, several panels of this court have been asked to consider adopting the exception discussed in *Marshall* and *White*. Although we have generally recognized that the *Calvary* court left open the option of adopting an exception under the right circumstances, we have uniformly declined to do so. *See Maroney v. F.O.P. Lodge No. 71*, 546 N.E.2d 99 (Ind.Ct.App.1989) (declining to adopt exception where FOP and injured member were involved in a group effort to renovate clubhouse), *trans. denied; The Benevolent and Protective Order of Elks Local 291 v. Mooney*, 666 N.E.2d 970 (Ind.Ct.App. 1996) (exception not adopted in injured lodge member's suit against lodge because *Calvary* court did not adopt exception), *trans. denied* 673 N.E.2d 766 (Boehm, J. dissenting); *Foster v. Purdue University Chapter, The Beta Mu of Beta Theta Pi*, 567 N.E.2d 865 (Ind. Ct.App.1991) (no exception recognized where injured fraternity member participated in informal decision-making in house, including use of alcohol in house and amount of alcohol purchased), *trans. denied; Strayer v. Covington Creek Condominium Assn.*, 678 N.E.2d 1286 (Ind.Ct.App.1997) (majority held that exception discussed in *Calvary* was not

adopted in Indiana and declined injured condominium owner's request to do so). Nevertheless, Hanson requests this court to again consider adopting an exception to the general rule to permit her to maintain her claim against St. Luke's.

Initially, we note that the general rule enunciated in *Calvary* has been the subject of much criticism in recent years. In particular, many courts have determined that the reasons behind the general rule, although legitimate in the past, are generally outdated. For example, in *Cox v. Thee Evergreen Church,* 836 S.W.2d 167 (Tex.1992), the Supreme Court of Texas, considering facts strikingly similar to those presented in the instant case, noted the many decisions which had eroded the doctrine of imputed negligence as it relates to unincorporated associations. Specifically, the court found that Texas law allowed unincorporated associations to sue and be sued in their own name, allowed non-members to sue unincorporated associations, and allowed members to sue unincorporated associations for acts which are adverse to the members' interests or are ratified by the association. *Id.* at 173. As a result, the court held:

> [W]e perceive no compelling reason for retaining this remnant of the original common law rules. In this regard, we share the concerns expressed by the South Carolina Supreme Court when it stated:
>
> > Why should a church member be precluded from suing an association in tort when a paid workman would be allowed to maintain an action for the very same injury?
>
> *Crocker v. Barr,* 305 S.C. 406, 409 S.E.2d 368, 371 (1991). We also are unable to discern a defensible reply to this query. Consequently, we hold that a member of an unincorporated charitable association is not precluded from bringing a negligence action against the association solely because of the individual's membership in the association.

*Cox,* 836 S.W.2d at 173. Thus, the court abolished the "ancient precept" which precluded lawsuits by a member against an unincorporated association. *Id.*

In addition to Texas, other jurisdictions have abolished the general rule by either statute or judicial decision. For example, in *Buteas v. Raritan Lodge,* 248 N.J.Super. 351, 591 A.2d 623, 628 (1991), the New Jersey Superior Court stated that "[T]he imputed negligence doctrine barring suit by a member against the association itself is based on an obsolete legal fiction whose time has long since passed." Several other jurisdictions have come to similar conclusions. *See e.g. Crocker v. Barr,* 305 S.C. 406, 409 S.E.2d 368, 372 (1991) (holding that "an unincorporated association, regardless of its underlying purpose, is amenable to suit by its members for tortious acts."); *Furek v. University of Delaware,* 594 A.2d 506, 513 (Del.1991) (fraternity pledge's suit against fraternity permitted pursuant to statute which allows suits against unincorporated associations and judgments against association property); *Tanner v. Columbus Lodge No. 11,* 44 Ohio St.2d 49, 337 N.E.2d 625, 627 (1975) ("[A] member of an unincorporated association may maintain an action against the association for personal injuries resulting from the negligent acts of its agents....") *See also* Claudia G. Catalano, annotation, *Liability for Personal Injury or Death Allegedly Caused by Defect in Church Premises,* 8 A.L.R.5th 1 § 3(a) (1992).

Finally, Justice Boehm of our Indiana Supreme Court recently criticized the general rule regarding unincorporated associations in his dissent from the denial of transfer in *The Benevolent and Protective Order of Elks Local 291 v. Mooney,* 673 N.E.2d 766 (Ind. 1996), (Boehm, J., dissenting from denial of transfer). Specifically, Justice Boehm noted that the rule is inherently unfair to the injured member of the unincorporated association, it unnecessarily limits the availability of insurance which most, if not all, unincorporated associations maintain, and it ignores the ability of an association to collect contributions to avoid an unjust allocation of loss among its members. *Id.* at 767. As a result, Justice Boehm opined that Indiana should join the many states which have abolished the general rule and permit members of unincorporated associations to sue the associations in their own names. *See also Mac-Donald v. Maxwell,* 655 N.E.2d 1249, 1250 n.

1 (Ind.Ct.App.1996) (noting unfairness of general rule which leaves member of unincorporated association with sole remedy of suing non-member employee).

As an intermediate appellate court, we are unable to take up Justice Boehm's call to arms and address the vitality of the general rule in Indiana.[3] However, we are at liberty to accept the invitation advanced by the Supreme Court in *Calvary*[4] and to consider the facts of this case in light of the rationales supporting the general rule to determine whether the adoption of an exception to the general rule is appropriate.

Here, the evidence designated to the trial court reveals that St. Luke's is a 3,800 member Methodist church located in Indianapolis, Indiana. St. Luke's employs many people, including, among others, several pastors, a business administrator, a maintenance supervisor and a large custodial staff. Additionally, St. Luke's is governed by a board of nine Trustees, each with a different area of responsibility. The Trustees are not elected by the general congregation; rather, they are nominated and approved by various groups within the church. Finally, St. Luke's operates pursuant to a uniform set of by-laws entitled The Book of Discipline of the United Methodist Church. None of this evidence indicates that church members are involved in the church's decision-making or

---

**3.** Were we not constrained by our status as an intermediate court and were we writing upon a clean slate, we would embrace Justice Boehm's suggestion and abolish the general rule in Indiana in cases involving premises liability. In particular, we believe that the members of unincorporated associations should be permitted to maintain lawsuits against those associations for injuries which occur on the premises of the unincorporated associations. However, because some unincorporated associations still exist today which do not have an existence separate from their members and in which the individual members still retain control, we would recognize an exception for those associations that meet these criteria. By recognizing such an exception, we would maintain the goal behind the current general rule, as discussed in *Calvary*, of avoiding collusive lawsuits among persons engaged in a joint enterprise.

We also note that our determination that the general rule should be abolished in cases of premises liability is consistent with the current state of premises liability law in Indiana. Although our courts previously recognized that landowners owed several different types of duties to persons depending upon their status on the land, our supreme court has recently attempted to simplify these classifications by adopting a single standard, that of reasonable care, for all persons who enter land by invitation of the owner. *See Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991) (adopting invitation test as basis for determining who is invitee and expanding class of invitees to include social guests). Similarly, we do not believe that artificial classifications should exist between injured members and injured nonmembers when both are injured as a result of the negligence of an unincorporated association. Such classifications do not further the principles of tort law, which include deterring negligent conduct and compensating the victims of those who act unreasonably.

In addition, we note that the general rule as currently applied in Indiana discourages persons from becoming members of unincorporated associations. For example, a person who is a frequent visitor at St. Luke's United Methodist Church may recover from the church if he or she is injured while attending services. However, once that frequent visitor becomes a member of the church, he or she gives up all protection from the church's tortious acts. Persons who wish to remain protected, therefore, are discouraged from joining churches. Our decisions applying the general rule have sanctioned this result, one with which, given the well-established separation between church and state, we are increasingly uncomfortable.

Finally, we recognize the difficulties inherent in applying the exception suggested by the California cases and noted by our supreme court in *Calvary*. Specifically, a rule which excepts certain unincorporated associations based upon their size leaves open the question of what is a large association. In some communities, a church of 100 members may be quite large, while in others, it is not. As a result, it is impossible to clearly delineate where the line separating large and small unincorporated associations should lie.

**4.** Although recognizing that the *Calvary* court discussed an exception to the general rule, two other panels of this court did not conclude that our supreme court left the door open for the adoption of such an exception under the appropriate circumstances. *See Benevolent and Protective Order of Elks Local 291*, 666 N.E.2d at 973 (recognizing that *Calvary* court discussed exception, but holding that "in subsequent cases we have consistently refused to read such an exception into *Calvary*"); *Strayer*, 678 N.E.2d at 1288 ("because the exceptions discussed in *Calvary* are not accepted in Indiana, the trial court was correct in not applying them to Strayer's case"); *but see id.* at 1289–90 (Sullivan, J. dissenting) (interpreting *Calvary* to provide that under appropriate circumstances, the court would adopt the exception).

even in choosing the decisionmakers. Instead, the record supports a conclusion that St. Luke's is much like a corporation, which exists perpetually and independently regardless of its individual members. In light of these facts, we conclude that the reasons supporting the general rule, including the prevention of collusive lawsuits and the avoidance of suits by a member against herself, do not apply in this case. Thus, we believe that the time is ripe to apply an exception to the general rule and to permit Hanson to maintain her claim against St. Luke's. The trial court's grant of summary judgment in favor of St. Luke's is, therefore, reversed.

## II. Trustees

 Hanson also appeals the trial court's grant of summary judgment in favor of the Trustees. According to Hanson, because the Trustees were responsible for the maintenance of the church property, they owed her a duty of care to make the parking lot reasonably safe. Thus, Hanson contends the trial court erroneously dismissed her claim against them.

In a negligence action, a plaintiff must prove the following three elements: 1) a duty owed to the plaintiff; 2) a breach of that duty by the defendants; and 3) damages to the plaintiff proximately caused by the breach. *Tri–Professional Realty v. Hillenburg,* 669 N.E.2d 1064, 1067 (Ind.Ct.App. 1996), *trans. denied.* As in any tort case, the existence of a duty remains a question of law. *Id.*

Having determined previously that St. Luke's operates more like a corporation than an unincorporated association and, as a result, is to be treated as a corporation for purposes of Hanson's complaint, we necessarily determine that the Trustees of St. Luke's, who are responsible for maintaining church property, are essentially its officers and directors. At common law, a corporate officer, director or employee is not personally liable for the torts of a corporation merely because of his office. *Bowling v. Holdeman,* 413 N.E.2d 1010, 1014 (Ind.Ct.App.1980). Some additional connection with the tort is required. *Id.*

Here, Hanson's claim against the Trustees is predicated on their general duty to maintain the church property. However, Hanson does not allege, nor does the record show, that any of the Trustees was responsible for clearing the parking lot or warning patrons of the dangerous conditions. To the contrary, the record reveals that St. Luke's contracted with a snow removal service for ice and snow removal. R. at 146–150. Thus, we cannot say that the Trustees had sufficient connection with the failure to remove the ice and snow to give rise to individual liability. The trial court, therefore, correctly granted summary judgment in favor of the Trustees.

Summary judgment reversed in part, affirmed in part and remanded.

NAJAM and STATON, JJ., concur.