Marta HANSON, Appellant (Plaintiff Below),

v.

SAINT LUKE'S UNITED METHODIST CHURCH and United Methodist South Indiana Conference, Inc., Appellees (Defendants Below).

No. 49S02–9804–CV–228.

Supreme Court of Indiana.

Dec. 23, 1998.

Lee C. Christie, Indianapolis, for Appellant.

Nana Quay–Smith, Karl L. Mulvaney, Bingham Summers Welsh & Spilman, Theodore J. Blanford, David DeMoss & Associates, Indianapolis, for Appellees.

SHEPARD, Chief Justice.

We revisit today the question whether a member of an unincorporated association may bring a negligence action against the association to recover damages for a tort committed against her by the association or by another member. We hold that unincorporated associations are amenable to suit by their members, and we reverse the grant of summary judgment for St. Luke's. Accordingly, we overrule our existing precedents to the contrary.[1]

**Factual and Procedural History**

At all times relevant to this case, St. Luke's United Methodist Church, in Indianapolis, was maintained and operated by its board of trustees. The board of trustees consisted of nine individuals. St. Luke's members, including Marta Hanson, do not participate in general elections to determine who will serve as trustees. Non-trustee members, including Hanson, have no control over the everyday maintenance of the church building or grounds.

At about 7 p.m. on Wednesday, December 22, 1993, Hanson attended a social gathering at St. Luke's sponsored by the Nora Toast-masters, who had rented a portion of the church for the evening. Both members and non-members of the church attended the function. Over the course of the evening, some amount of snow and ice accumulated in the parking lot of the church.

After spending about two hours inside, Hanson left the church and walked toward her automobile. As she neared her car, Hanson slipped and fell. Associate Pastor Steve Miller witnessed Hanson's fall and immediately drove her to the hospital, where she received treatment for a broken arm. Miller later commented to St. Luke's business manager that the parking lot had been slick on his way into the church earlier that evening and was still slippery on his way out when he saw Hanson fall.

Hanson sued St. Luke's and its trustees for her personal injuries, alleging negligence for failure to properly maintain the parking lot, failure to inspect the parking lot for dangerous conditions, failure to remove the snow and ice from the parking lot, and failure to warn her of the dangerous conditions. The trial court granted summary judgment in favor of all the defendants,[2] applying the common law rule that a member of an unincorporated association cannot sue the association for the negligence of another member. Hanson appealed that judgment.

On appeal, the Court of Appeals reversed the summary judgment with regard to St. Luke's, and affirmed the summary judgment with regard to the trustees. *Hanson v. Saint Luke's United Methodist Church*, 682 N.E.2d 1314 (Ind.Ct.App.1997). In ruling that Hanson may maintain a personal injury lawsuit against the church, the court applied an exception to the common law rule, an exception that this Court has never formally adopted.[3] We granted St. Luke's petition for transfer.

---

1. Specifically, we overrule *Calvary Baptist Church v. Joseph*, 522 N.E.2d 371 (Ind.1988).

2. On May 24, 1996, the trial court granted summary judgment in favor of St. Luke's, and thereafter clarified its judgment to include the trustees. We summarily affirm the Court of Appeals decision with respect to the trustees. *Hanson v. Saint Luke's United Methodist Church*, 682 N.E.2d 1314, 1320 (Ind.Ct.App.1997). Ind.Appellate Rule 11(B)(3).

3. The court cited several Court of Appeals decisions that declined to apply an exception to the rule absent an endorsement by this Court. *Hanson*, 682 N.E.2d at 1317–18 (citing *Strayer v. Covington Creek Condominium Ass'n.*, 678 N.E.2d 1286 (Ind.Ct.App.1997); *Benevolent and Protective Order of Elks Local 291 v. Mooney*, 666 N.E.2d 970 (Ind.Ct.App.1996); *Foster v. Purdue University Chapter, The Beta Mu of Beta Theta Pi*, 567 N.E.2d 865 (Ind.Ct.App.1991); *Maroney v. Fraternal Order of Police Lodge No. 71*, 546 N.E.2d 99 (Ind.Ct.App.1989)).

**Summary Judgment Standard of Review**

A grant of summary judgment requires that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). On appeal from summary judgment, the reviewing appellate court faces the same issues that were before the trial court, and analyzes them in the same way. *Ambassador Fin. Services, Inc. v. Indiana Nat'l Bank*, 605 N.E.2d 746, 751 (Ind.1992). Although the nonmovant has the burden of demonstrating the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied her day in court. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664 (Ind.1997).

### Back to *Calvary*

In this case, the trial court applied controlling precedent from this Court, *Calvary Baptist Church*, 522 N.E.2d 371, in granting summary judgment for the defendants. *Hanson*, 682 N.E.2d at 1316. We now choose to accept the invitations of the Courts of Appeals [4] and revisit the rule of *Calvary*.

*A. The Common Law Rule of Calvary*

As a general rule, a member of an unincorporated association [5] may not sue the association itself for injuries suffered as a result of the tortious acts of the association or its members. *Calvary*, 522 N.E.2d at 374. The rule rests upon the doctrine of imputed liability. Under the theory of imputed liability:

> [M]embers of an unincorporated association are engaged in a joint enterprise. The negligence of each member in the prosecution of that enterprise is imputable to each and every other member so that the member who has suffered damages through the tortious conduct of another member of the association may not recover from the association for such damage. It

would be akin to the person suing himself as each member becomes both a principal and an agent as to all other members for the actions of the group itself.

*Id.* at 374–75.

The imputed liability doctrine requires that the association's membership is engaged in a joint enterprise. 65A C.J.S. *Negligence* § 158 (1966). The requirement that the members of an unincorporated association be engaged in a joint enterprise does not mean, however, that at the time of the accident at issue the members must be engaged in some specific "group activity," such as repairing the church's roof. *Biereichel*, 693 N.E.2d at 637. This requirement is generally satisfied in the church congregation setting in that the congregation's members are thought to be engaged in the joint enterprise of worship and/or maintaining a premises for worshiping. *See* Claudia G. Catalano, Annotation, *Liability for Personal Injury or Death Allegedly Caused by Defect in Church Premises*, 8 A.L.R.5th 1, 31–35, 1992 WL 767605 (1992) (citing cases involving church member-plaintiffs "engaged in the joint enterprise of maintaining the building in which they worshipped," and "engaged in the joint enterprise of worshipping God in fellowship together").

Applying the common law rule, we held in *Calvary* that a church member who had been injured when he fell off a ladder while repairing the church's roof could not sue the church in its own name. 522 N.E.2d at 372. The plaintiff in *Calvary* argued that the common law doctrine, which insulated unincorporated associations from suit by their members, was based on the historical and obsolete idea that such associations were not legal entities, and that the passage of Indiana Trial Rules 17(B) and (E) permitted

---

**4.** *See Biereichel v. Smith*, 693 N.E.2d 634, 637 (Ind.Ct.App.1998) ("Even assuming the facts of this case may justify considering an exception to the general rule, we believe that any abrogation of the general rule expressed in *Calvary* is best left to the highest court of our State."); *Hanson*, 682 N.E.2d at 1319 n. 3 ("Were we not constrained by our status as an intermediate court and were we writing on a clean slate, we would ... abolish the general rule in Indiana in cases involving premises liability."); *MacDonald v. Maxwell*, 655 N.E.2d 1249, 1250 n. 1 ("[W]e

believe that it may be time to take another look at the [*Calvary*] rule and particularly the rule's impact on the employees of unincorporated associations and injured plaintiffs.").

**5.** By definition and admission, St. Luke's is an unincorporated association: a voluntary group of persons which, without a charter, was formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective. *Black's Law Dictionary* 1531–32 (6th ed. 1990); (Appellee's Br. at 2).

suits such as his.[6]  *Id.* The Court rejected this argument, noting that Rules 17(B) and (E) "were directed to the suability of unincorporated associations as parties" and did not change the substantive rule of nonliability of unincorporated associations to their members.[7]  *Id.* at 373.

### B. The Exception to the Common Law Rule

While the common law rule is followed by many American jurisdictions,[8] several states have recognized an exception to the rule, the wisdom of which this Court acknowledged but declined to adopt in *Calvary.* There, the Court stated:

> Although we recognize the wisdom of applying an exception to the general rule in the case of large unincorporated associations such as labor unions having a hierarchy of structure that drastically changes

the relationship of membership to association and the control that a member has in its affairs, we find it clearly demonstrated that no such question was presented in regard to the Calvary Baptist Church and its members.

522 N.E.2d at 375.  The establishment of an exception to the general rule is frequently attributed to the California case of *Marshall v. International Longshoremen's and Warehousemen's Union,* 57 Cal.2d 781, 22 Cal. Rptr. 211, 371 P.2d 987 (Cal.1962), in which the California Supreme Court allowed a union member to bring a tort action against the union.  The court said that the justifications underlying the traditional rule no longer represented the reality of certain modern associations,[9] such as some labor unions.  In that instance, the member and the union are distinct, with the union representing the com-

6. As we pointed out in *Calvary,* 522 N.E.2d at 373, Trial Rules 17(B) and (E), were enacted by the 1969 session of the General Assembly and later adopted without change by order of this Court, effective January 1, 1970.  Rule 17 provides:

    (B) *Capacity to sue or be sued.* The capacity of a party to sue or be sued shall be determined by the law of this state, including its conflicts rules, except that a partnership or unincorporated association may sue or be sued in its common name.
    . . . .
    (E) *Partnerships and unincorporated associations.* A partnership or an unincorporated association may sue or be sued in its common name.  A judgment by or against the partnership or unincorporated association shall bind the organization as if it were an entity.  A money judgment against the partnership or unincorporated association shall not bind an individual partner or member unless he is named as a party or is bound as a member of a class in an appropriate action (Rules 23 and 23.2).

7. Justice DeBruler acknowledged in dissent that while the trial rules allowed unincorporated associations to sue and be sued, "[t]his of course does not answer the question of who may sue the church and what for." *Calvary,* 522 N.E.2d at 376.  For citations to and discussions of cases citing the common law rule, see Catalano, 8 A.L.R.5th at 31–35; 7 C.J.S. *Associations* § 53 (1980); 65A C.J.S. *Negligence* § 158 (1966); P.H. Vartanian, Annotation, *Recovery by Member from Unincorporated Association for Injuries Inflicted by Tort of Fellow Member,* 14 A.L.R.2d 473–78, 1950 WL 7068 (1950).  *See also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 74, at 529–30 (5th ed. 1984) (discussing gener-

ally the doctrine of "imputed contributory negligence").

8. Among the other jurisdictions that have applied the common law rule are Rhode Island, Wyoming, Vermont, Pennsylvania, Wisconsin, and Washington.  *See Walsh v. Israel Couture Post,* 542 A.2d 1094 (R.I.1988); *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704 (Wyo. 1987); *Duplis v. Rutland Aerie, No. 1001, Fraternal Order of Eagles,* 118 Vt. 438, 111 A.2d 727 (Vt.1955); *De Villars v. Hessler,* 363 Pa. 498, 70 A.2d 333 (Pa.1950); *Zehner v. Wilkinson Memorial United Methodist Church,* 399 Pa.Super. 165, 581 A.2d 1388 (Pa.Super.1990); *Hromek v. Gemeinde,* 238 Wis. 204, 298 N.W. 587 (Wis.1941); *Carr v. Northern Pac. Beneficial Ass'n.,* 128 Wash. 40, 221 P. 979 (Wash.1924).

9. The court stated:

    Basically this [common law] rule has been arrived at by applying to other forms of voluntary, unincorporated associations the rules of law developed in the field of business partnerships.  Under traditional legal concepts the partnership is regarded as an aggregate of individuals with each partner acting as agent for all other partners in the transaction of partnership business, and the agents of the partnership acting as agents for all of the partners.  When these concepts are transferred bodily to other forms of voluntary associations such as fraternal organizations, clubs and labor unions, which act normally through elected officers and in which the individual members have little or no authority in the day-to-day operations of the association's affairs, reality is apt to be sacrificed to theoretical formalism.  *Marshall,* 22 Cal.Rptr. 211, 371 P.2d at 989.

mon or group interests of its members, as distinguished from their personal or private interest.

> "Structurally and functionally, a labor union is an institution which involves more than the private or personal interests of its members. It represents organized, institutional activity as contrasted with wholly individual activity." ... The union engages in a multitude of business and other official concerted activities, none of which can be said to be the private undertakings of its members.

*Id.* at 989 (quoting *United States v. White*, 322 U.S. 694, 701–02, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944)). The court concluded that the common law rule barring suits by members against their associations should not apply when: 1) the unincorporated association has a legal existence separate from its members; and 2) the members do not exercise control over the operations of the association. *See id.* at 990–91.

While the *Marshall* decision limited its holding to the case of labor unions, *id.* at 991 n. 1, the court later extended the application of the exception to different types of unincorporated associations that satisfy the *Marshall* criteria. *White v. Cox*, 17 Cal.App.3d 824, 95 Cal.Rptr. 259 (1971).

In the present case, the Court of Appeals found that Hanson's relation to St. Luke's warranted the application of the *Marshall* exception. After examining facts such as the size of the church's congregation, the hierarchy of the church's government, and the existence of a set of by-laws guiding the church's decisionmaking, the court concluded:

> that the reasons supporting the general rule, including the prevention of collusive lawsuits and the avoidance of suits by a member against herself, do not apply in this case. Thus, we believe that the time

is ripe to apply an exception to the general rule and to permit Hanson to maintain her claim against St. Luke's. *Hanson*, 682 N.E.2d at 1320.

## C. Abrogation of the Common Law Rule

Beyond applying an exception to the common law rule, several jurisdictions have chosen to abolish or abrogate the rule entirely.[10] Some of these jurisdictions have chosen to abolish the common law rule by statute. For example, in *Crocker v. Barr*, 305 S.C. 406, 409 S.E.2d 368 (S.C.1991), the Supreme Court of South Carolina allowed a church member to sue the church for injuries sustained when he fell from some ceiling joists to the floor below while attempting to repair the church's sound system. The court based its decision on a statutory framework, S.C.Code Ann. § 33–55–210 and subsequent sections, which the court said allowed unincorporated associations to be held liable for injuries sustained by a member-plaintiff while performing voluntary labor, and caused by the negligence of fellow members. *See Crocker*, 409 S.E.2d at 370–71.[11] The court considered important the fact that the statute separated the liability of the church from that of the membership, as well as the belief that the doctrine of imputed negligence would discourage volunteerism by potentially barring suits by volunteers against associations.[12] *Id.* at 371. The court posed the rhetorical question: "Why should a ... member be precluded from suing an association in tort when a paid workman would be allowed to maintain an action for the very same injury?" *Id.*

Other states have also relied upon a statutory scheme abolishing the common law rule to allow these suits. In *Furek v. University of Delaware*, 594 A.2d 506 (Del.1991), the Supreme Court of Delaware allowed a suit by a fraternity pledge against a fraternity,

---

10. Judge Baker did not mince words on the benefits of this course. *See Hanson*, 682 N.E.2d at 1319 n. 3.

11. Interestingly, the court in *Crocker* relied in part upon the guidance of the Indiana Court of Appeals decision, *Joseph v. Calvary Baptist Church*, 500 N.E.2d 250 (Ind.Ct.App.1986), which we later overturned in favor of the common law rule, as noted above. 409 S.E.2d at 370.

12. On the contrary, St. Luke's argues that the abrogation of the common law rule, as opposed to the application of the rule, would discourage volunteerism by necessitating that some benevolent organizations discontinue services for fear of being sued. (Appellee's Br. at 12–14.) Because the actual effects on volunteerism in this state are not clear to us, we choose not to consider them here.

based on a state statute authorizing suits against unincorporated associations and judgments against association property. In *Buteas v. Raritan Lodge No. 61*, 248 N.J.Super. 351, 591 A.2d 623 (N.J.Super.A.D.1991), a New Jersey court relied on a state statute which modified the common law to allow a suit by a lodge member against the association. The court stated: "[T]he imputed negligence doctrine barring suit by a member against the association itself is based upon an obsolete legal fiction whose time has long since passed." *Buteas*, 591 A.2d at 628. Finally, in *Tanner v. Columbus Lodge No. 11, Loyal Order of Moose*, 44 Ohio St.2d 49, 73 O.O.2d 233, 337 N.E.2d 625 (Ohio 1975), the Supreme Court of Ohio held that a state statute overruled previous cases which applied the common law rule.

In at least one jurisdiction, a court abrogated the common law rule without a statutory directive. In *Cox v. Thee Evergreen Church*, 836 S.W.2d 167 (Tex.1992), the Supreme Court of Texas addressed this issue in the context of a church member's suit against the church for injuries sustained in a slip and fall. The court acknowledged that the Texas rule of procedure which allowed unincorporated associations to sue and be sued as legal entities, the counterpart to our Trial Rules 17(B) and (E), did not alter the substantive common law rule of nonliability towards members. *Id.* at 171. The court then examined the erosion of the common law rule, stating:

> So what remains of the early common law rules regarding unincorporated associations and the imputed negligence doctrine? Apparently, very little.... We allow nonmembers to bring suits, including those for negligence, against unincorporated associations. We allow members to sue unincorporated associations for acts committed that are strictly adverse to the member's interests.... Nevertheless, one vestige of the common law survives—our obedience

to an ancient precept automatically imputing the negligence of an unincorporated association to an injured member.... [W]e perceive no compelling reason for retaining this remnant of the original common law rules.

*Id.* at 173 (citations omitted). The court then held that the member's tort action against the association would be allowed. *Id.*

■ We think the facts in this case and the arguments of the parties are sufficiently persuasive to warrant abandonment of the common law rule of imputed negligence. We hold that members shall be allowed to bring tort actions against the unincorporated associations of which they are part and overrule *Calvary.* As Justice Boehm recently pointed out:

> The notion of imputed negligence has been aptly described as having "a very bad name of its own" leading to "a group of quite unreasonable and rather senseless rules." W. [Page] Keeton [et al.], *Prosser and Keeton on the Law of Torts* [§ 74, at] 529 (5th ed. 1984). Although many states have seen fit to abolish the doctrine by legislation, the reasons for overruling *Calvary Baptist* are no less persuasive in the absence of a statute. These include: (1) it is inherently unfair to require an injured member, who is one of a number of equally faultless members, to bear a loss incurred as a result of the association's activities; (2) there is no reason to limit the availability of the insurance that associations can, and presumably often do, obtain to avoid unexpected liabilities of the members as a result of exposure to third party claims; and (3) contribution is available to avoid unjust allocation of any loss as among the members.

*Benevolent and Protective Order of Elks, Local 291 v. Mooney*, 673 N.E.2d 766, 767 (Boehm, J., dissenting from denial of transfer). We find merit in Justice Boehm's conclusion.[13]

**13.** *MacDonald*, 655 N.E.2d 1249, represents an example of an arbitrary and unfair consequence of the common law rule. In that case, a church member who was injured in a slip and fall at the church brought suit against the janitor and the church itself. Plaintiff claimed that the janitor: 1) used the wrong type of floor wax, 2) failed to properly strip and pre-treat the floor before applying the wax, 3) improperly applied and buffed

the wax, and 4) improperly spray buffed the area where she fell. *Id.* at 1251. Plaintiff also filed the suit against the church, but that action was dismissed based upon the common law rule, leaving her with an action only against the janitor. *Id.* at 1250 n. 1. Although that issue was not raised on appeal, the Court of Appeals expressed its frustration with the common law rule which would leave this plaintiff with only an action

In addition to the foregoing policy considerations, we believe the change in the common law may also be justified by Indiana's shift from a system of contributory negligence to one of comparative fault. Under a system of contributory negligence, the common law doctrine of imputed negligence necessarily barred these suits, assuming no exceptions applied. The logic went thusly: if a member and an association are engaged in a joint enterprise, then by alleging that the association is at fault, a plaintiff is alleging he himself is at least partially at fault, and under contributory negligence principles, if the plaintiff is at fault at all, he may not recover. Comparative fault principles, such as those embodied in Indiana's Comparative Fault Act, Ind.Code § 34–4–33–1 through – 12, change the dynamic of this logic in a way that changes the outcome.

Under a comparative fault system, "[t]he relevant issue is not whether the injured party is a member of the association but rather whether his own degree of actual causative negligence, if any, is greater or lesser than that of which he complains." *Buteas*, 591 A.2d at 628–29. Now, a small degree of negligence on the part of the plaintiff, whether actual or assumed through a joint enterprise, no longer constitutes a complete bar to recovery. The plaintiff's negligence can be weighed against others' in computing her recovery. As stated by the New Jersey court:

> [A] plaintiff can [now] be held chargeable to the extent his own conduct has contributed to the harm he has suffered. These rules are fully applicable in an action by a member against a voluntary association when the member's negligence, based on his participation in any form in the creation of this risk, may have contributed to his injuries. That participation may result in the reduction of his recovery. It may even preclude recovery if the finder of fact concludes that the plaintiff's negligence is

greater than 50%. But the mere potential for assessment of a degree of culpability against him cannot bar the action any more than a contributory negligence claim in any other context could.

*Id.* at 629. We agree.

The member's right to bring suit is, of course, not without limitation. Such a suit is subject to the limits already in place in our Trial Rules. While Rule 17 did not change the substantive common law rule, *see Calvary*, 522 N.E.2d at 374, it did set forth general limitations on suits against unincorporated associations. Until now, those limitations applied only to suits by non-members against the associations. Having extended the right of action to members, we conclude that Rule 17 still governs the limits of such actions.

Trial Rule 17(E) states in part that: A judgment by or against the partnership or unincorporated association shall bind the organization as if it were an entity. A money judgment against the partnership or unincorporated association shall not bind an individual partner or member unless he is named as a party or is bound as a member of a class in an appropriate action. . . .

As a result, while a member may now sue an unincorporated association in tort, she may only reach the association's assets. If she wishes to reach the assets of any individual, she must name that individual as a party and prove that individual's fault, as always. As a result, individual members, including officers and trustees, may not be held vicariously liable for a judgment against the association. Other jurisdictions that have abandoned the common law rule have also stressed the separation of association and member assets for satisfaction of judgments. *See, e.g., Cox*, 836 S.W.2d at 174 (Cook, J., concurring) ("The implicit holding of today's opinion is that the individual liability of a member will be based

---

against a janitor for negligent application of floor wax:

> Thus, [the plaintiff's] sole remedy is to sue [the janitor], a non-member, part-time [employee] who, because of the general rule, is left without the usual employee protections of respondeat superior or joint and several liability. . . . [W]e find it hard to believe that the rule was [] intended to allow a part-time employee of an

association to shoulder the sole responsibility for a member's accident. . . . [W]e find it hard to accept that a non-member employee of an unincorporated association should be exposed to such liability or that an injured plaintiff could only look to the pockets of a non-member employee. . . .

*Id.*

on [his] actual participation in the tort or ratification of the actions which cause injury.... The injured member must look to those members who were actively negligent ... or the unincorporated association itself."); *Crocker*, 409 S.E.2d at 370 (citing precedent interpreting a state statute that authorized suits for the proposition that "no liability arises against any member unless judgment is entered against such member by plaintiffs"); *Tanner*, 337 N.E.2d at 626 (noting that the relevant state statute provided "that money judgments against [unincorporated associations] be enforced only as to the association as an entity, and not against the property of an individual member"). Justice Boehm explained the recovery limitation in his *Elks Local 291* dissent:

> Since 1970 the trial rules of this state have permitted unincorporated associations to be sued in their own name. Any such suit exposes the assets of the association, not the members, unless the members are individually joined. Ind.Trial Rule 17(E). In bringing such a suit, the member is not "suing himself" at all. Rather the member seeks recovery from the assets of the association, just as does any third party. If the plaintiff chooses to seek recovery from other members, that too, is permitted procedurally.

673 N.E.2d at 767. Providing this limitation on recovery appropriately advances the goals of tort law, "which include deterring negligent conduct and compensating the victims of those who act unreasonably." *Hanson*, 682 N.E.2d at 1319 n. 3.

### Conclusion

We abolish the "ancient precept" which until now precluded members of unincorporated associations from suing their associations for tortious conduct, and we hold that such suits shall now be allowed, subject to the applicable principles of comparative fault and the limitations in place in our trial rules. Because the defendant, St. Luke's, is no longer entitled to judgment as a matter of law, the grant of summary judgment for it is hereby reversed and the case remanded to the trial court to proceed in accordance with this opinion.

DICKSON, SULLIVAN, SELBY, and BOEHM, JJ., concur.